(65 App. Div. 134.)

## MOLLER v. PRESBYTERIAN HOSPITAL IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 8, 1901.)

INJUNCTION—ERECTION OF BUILDING—COVENANTS RESTRICTING USE.

> Where a hospital association purchases property without notice of any verbal agreements of its grantor restricting its use, and bases its right to use it on the record title, which contains no restriction interfering with its proposed use, except that the premises are not to be used for any trade or business which may be noxious or offensive to neighboring inhabitants, it will not be restrained from erecting a building thereon for use as a residence for nurses, without evidence justifying a conclusion that a building so used will be any more obnoxious to neighboring inhabitants than a building used as a residence by any other class of persons.

Appeal from special term, New York county.

Action by John Moller against the Presbyterian Hospital in the City of New York. From an order denying a motion for an injunction pending the action, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Louis Marshall, for appellant.
Robert Thorne, for respondent.

INGRAHAM, J. The defendant is the owner of a plot of land on the northeast corner of Seventy-First street and Park avenue, and the plaintiff is the owner of a house and lot on the southerly side of Seventy-Second street. The rear of the plaintiff's premises abuts on the rear of the defendant's premises, both being a portion of a block of land between Madison and Park avenues and Seventy-First and Seventy-Second streets. This block was owned, prior to April 6, 1880, by Henrietta A. Lenox, and on that day she conveyed it to Tracy and Russell by a deed containing a covenant whereby the grantees covenanted that they would not use the premises for certain specified purposes, "or any manufactory, trade, or business whatever which may be in any wise noxious or offensive to the neighboring inhabitants." The complaint alleges that, for the purpose of selling this tract of land to the best advantage and inducing purchasers to purchase the same, Tracy and Russell adopted a general plan for the improvement of the block, regulating the manner of its improvement and occupation, and restricting the use thereof exclusively for private dwelling houses, which plan they

communicated to the various persons negotiating with them for the purchase of lots in said block, and which was formulated in a covenant intended to bind both the purchaser and themselves, and their respective heirs and assigns. This covenant restricted the use of the premises to buildings exclusively of brick, stone, or iron, with roofs of slate or metal, not less than four stories in height, to be used and occupied exclusively for private dwelling houses. Tracy and Russell subsequently conveyed a plot of ground, which included the lot owned by the plaintiff, by a deed containing this covenant. Subsequent to the execution of this deed, in March, 1895, Tracy and the executors of Russell conveyed to Edward Kilpatrick the premises on the northwest corner of Park avenue and Seventy-First street, being 102.2 feet on Park avenue and 270 feet on Seventy-First street. This deed contained a covenant by which the grantees covenanted and agreed that they would not erect or build upon the easterly end of said premises, being 95 feet on the street and 102.2 feet on the avenue, or on the plot of ground on the westerly end of said premises, being 50 feet on the street and 102.2 feet in depth, or any part thereof, any building or buildings, except of stone, brick, or iron, to be used and occupied exclusively for private dwelling houses, "but the covenants and restrictions in the last above paragraph contained shall not affect or apply to the residue of the premises." The effect of this covenant was that the building upon the Park avenue front, 102.2 feet on Park avenue and 95 feet on the street, should be restricted to private dwelling houses, and the plot of land 50 feet on the street, commencing 220 feet west of Park avenue, should also be restricted, leaving a plot of land between these two plots of 125 feet on Seventy-First street, to the center of the block, between Seventy-First and Seventy-Second streets, containing no restrictions. Subsequently, on July 1, 1895, Kilpatrick conveyed a portion of the premises purchased by him from Tracy and the executors of Russell to the defendant; the premises thus conveyed being the plot on the northwest corner of Park avenue and Seventy-First street, 102.2 feet on Park avenue, and 220 feet on Seventy-First street. By this conveyance the defendant became the owner of the plot of land, the Park avenue front being subject to the covenant above mentioned, while the plot in the rear, 125 feet on Seventy-First street, was not so restricted; and it is upon this plot of ground, which was not restricted by the deed to the defendant, commencing 97 feet west of Park avenue, and extending to a point 220 feet west thereof, that the defendant is about to erect a building which it proposes to use as a home for the trained nurses connected with the defendant hospital, and this action is brought to restrain the defendant from erecting such building.

The situation, therefore, is that this plot of ground upon which this building is to be erected is free and clear of all incumbrances, except the so-called "Lenox covenant" against nuisances, so far as there are any express covenants in any deeds affecting the premises in question. The building that is to be erected by the defendant upon this property is to be used as a residence for the nurses

engaged in hospital work, and there is nothing to justify the conclusion that a building so used would be any more obnoxious to the neighboring inhabitants than a building used for a residence for any other class of persons. The proposed building, as stated by the vice president of the Presbyterian Hospital, is to be used as a dwelling house of the most strict and exclusive character, to be occupied by the superintendent and his family and the nurses of the hospital. "It is to be neither a flat house, a tenement house, nor a boarding house, but the utmost care will be exercised in the selection of those who are or will be admitted to it, and its inmates will be constantly subjected to a careful supervision and constraint." There is certainly nothing used in a building of this character that can be said to come within the restriction of the Lenox covenant, and there is no evidence to show that the defendant, before purchasing these premises, had any knowledge of any statement or representations made by Tracy and Russell, or either of them, by which any plan was adopted for the improvement of this block; nor is there anything alleged which would justify a finding that the defendant had knowledge of any fact which would put it upon inquiry as to any agreement or understanding with Tracy and Russell by which the absolute right to the use of the premises in question was to be at all controlled or limited. Upon these facts, the court below refused to grant an injunction restraining the erection of the building, and from an order embodying such refusal the plaintiff appeals.

So far as the Lenox covenant is concerned, there would seem to be nothing to justify a finding that this proposed use of the property was within the covenant. Assuming that the use to which the defendant was to put the property could be included within the term "business," it is not every business that would be affected by this covenant. It is not claimed that this use could be included within any of the specific businesses mentioned in the covenant. To be included within the general terms mentioned, it must be found as a fact that it is a business "which may be in any wise noxious or offensive to the neighboring inhabitants." The definition given to such a covenant by the court of appeals (Rowland v. Miller, 139 N. Y. 93, 34 N. E. 765, 22 L. R. A. 182) would seem to exclude the use to which the defendant intends to put these premises. In that case the court said:

"We cannot suppose that the parties had in mind any business which might be offensive to a person of a supersensitive organization, or to one of a peculiar and abnormal temperament, or to the small class of persons who are generally annoyed by sights, sounds, and objects not offensive to other people. They undoubtedly had in mind ordinary, normal people, and meant to prohibit trades and business which would be offensive to people generally, and would thus render the neighborhood to such people undesirable as a place of residence."

There is nothing in the case to show that a building used solely for the residence of nurses employed in a hospital would be thus obnoxious to the neighborhood. It cannot be disputed that an ordinary apartment house or a properly conducted hotel would not be within this covenant. Nothing appears to justify an inference

that this use of the property would be any more objectionable than that of an apartment house or a hotel. The court is asked to enjoin, not the carrying on of a business that has been demonstrated to be obnoxious, but the erection of a building which the defendant intends to erect upon its property. If the use to which this building should be put after it is erected should become obnoxious to the neighborhood, within the provisions of this covenant, it would then be time for the plaintiff to ask the court to enjoin such use; but certainly nothing appears to justify the court in restraining the defendant from erecting a building which in terms is not prohibited by the covenant, when the use, so far as appears, will not of itself constitute a violation of the covenant. The adjoining property owners have had for many years the advantage of having this property unoccupied by buildings, and it may be that the erection of any building upon the premises would have some effect on the value of the adjacent property, especially a building covering the whole lot, which would to some extent interfere with the light and air of the plaintiff's house. But, to restrain the defendant from using this property, something more must be shown than that it is an advantage to the abutting property that it should remain unoccupied, and I cannot see that by the proposed use of the property by the defendant this covenant would be violated. As before stated, the defendant had no knowledge of any oral agreement or promise by Tracy and Russell that all of the property of the block should be restricted as to the use to which it should be put; and, assuming that there was evidence of an oral agreement by Tracy and Russell, or their representatives, which justified the purchasers of other portions of the block in understanding that all of the block should be so restricted, there is not the slightest evidence that the defendant had any notice of any such understanding, or was chargeable with knowledge of it. The defendant purchased the property, basing its right to use it upon the record title, which contains no restriction interfering with the proposed use; and the mere circumstance that it may be said to have had notice of the fact that other property in the neighborhood had been restricted is certainly not sufficient to charge it with notice of a verbal agreement of a restriction upon the property that it had purchased. And it appears that other portions of the block had been applied to a use which was in violation of the restrictions contained in the plaintiff's deed, as a church had been erected on the corner of Madison avenue and Seventy-First street.

I think, therefore, that there is nothing in these papers that would justify the court in granting the injunction asked for, and that the order appealed from should be affirmed, with $10 costs and disbursements. All concur.