(91 Misc. Rep. 122)

### HALL v. HOUSE OF ST. GILES THE CRIPPLE.

(Supreme Court, Special Term, Kings County.   June 22, 1915.)

1. NUISANCE ⬤⟿3—"NUISANCE PER SE"—HOSPITAL.
   A hospital of gracious design, with modern equipment and a high personnel, erected for the care of crippled children, is not a "nuisance per se."
   [Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 4, 5, 9–25; Dec. Dig. ⬤⟿3.
   For other definitions, see Words and Phrases, First and Second Series, Nuisance Per Se.]

2. EMINENT DOMAIN ⬤⟿2—STREETS—BUILDING RESTRICTIONS—ABOLITION—COMPENSATION.
   Laws 1868, c. 631, providing for widening certain streets and establishing restrictions as to buildings to be erected thereon, was subsequently amended by Laws 1897, c. 702, § 14, so as to release a portion of such property from such restrictions. *Held* that, since the Legislature cannot permanently incumber its trusteeship over public streets for purely private æsthetic purposes, the statute abolishing such restrictions without compensation was not unconstitutional.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3–12; Dec. Dig. ⬤⟿2.]

3. CONSTITUTIONAL LAW ⬤⟿92—VESTED RIGHTS—CHANGE OF LAWS.
   There is no vested right that the law shall continue to be unchanged.
   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 174, 175, 178–180, 207, 225–227, 237; Dec. Dig. ⬤⟿92.]

4. MUNICIPAL CORPORATIONS ⬤⟿663—STREETS—RIGHTS OF ABUTTING OWNERS.
   Since the power and duty to maintain and care for streets in their primary use is continuous, the Legislature may not be questioned in its exercise, and under it a property once acquired for street purposes may have added burdens and limitations placed thereon, even though private detriment results.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1438–1440; Dec. Dig. ⬤⟿663.]

5. MUNICIPAL CORPORATIONS ⬤⟿666—BUILDING RESTRICTIONS—STATUTES.
   Laws 1868, c. 631, forbidding the erection along certain streets of enumerated trades and businesses inherently dangerous, notoriously offensive, or sharply obnoxious, does not include, either in its general terms or as a business, a hospital for the care of crippled children.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1442; Dec. Dig. ⬤⟿666.]

Action by Julia H. Hall against the House of St. Giles the Cripple, to enjoin the erection of a hospital.   Complaint dismissed.

Frank E. Johnson, Jr., of Brooklyn, for plaintiff.
Meier Steinbrink, of Brooklyn, and David Provost, of New York City, for defendant.

KELBY, J.   [1] The proposed hospital building is to be of gracious design, with modern equipment, and directed by a high personnel.   Its presence cannot of itself be held to be a nuisance per se. Nor can the coming and going of crippled children in search of care and cure, though undoubtedly pain and distress will sometimes be caused by the sight of suffering to those living near by.   Giving full

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

credence to the sincerity of plaintiff's fears of consequences, the settled rules of equity preclude relief upon the theory that the erection and maintenance of such an hospital will constitute a private nuisance. Heaton v. Packer, 131 App. Div. 812, 116 N. Y. Supp. 46. Very likely these apprehensions will never be realized; but, should an obnoxious or improper use cause the institution to develop into an actual nuisance, relief will then be available. At this time, however, plaintiff's right to an injunction must rest upon the claim of a statutory restriction.

By the act in question provision was made for widening certain streets, including President street, at the point referred to. With the evident design of giving the streets a certain ornamental character, there was a restriction included in the statute against the erection of "any slaughter house, tallow chandlery, furnace, foundry, nail or other factory, or other manufactory for making starch, glue, varnish, vitriol, oil or gas, or for tanning, dressing, repairing and keeping skins, hides or leather, or any distillery, brewery, sugar, bakery, lime kiln, railway or other stable or depot, or any other manufactory, trade, business or calling which may be in any wise dangerous, noxious or offensive to the inhabitants." Due proceedings were had under this law, leading to an award for the property taken for the widening, and an assessment upon adjoining owners for the benefits conferred. Afterwards, in 1897, the charter of the city of Brooklyn, in which this restriction had been included by re-enactment (Laws 1888, c. 583, tit. 16, § 4), was amended (Laws 1897, c. 702, § 14), so as to release from the restriction most of the property originally affected, including the block upon which the parties to this action have their holdings.

[2] The contention most vigorously urged by the plaintiff is that this statutory restriction was a property right belonging to the abutting owners; and this because of the fact that in the condemnation proceedings the abutting owners at the time were assessed for the benefit of the improvements thereunder, and that, of this property right, these owners and their successors in title could not be deprived without due compensation. It is therefore urged that the act of 1897, which abolished the restriction without providing for any compensation was unconstitutional and void. To so construe the statutory restriction would give it a scope and purpose, not only beyond the legislative intent, but beyond the legislative power. The Legislature cannot permanently incumber its private æsthetic benefit its trusteeship over public property. Welch v. Swasey, 193 Mass. 364, 79 N. E. 745, 23 L. R. A. (N. S.) 1160, 118 Am. St. Rep. 523; Id., 214 U. S. 91, 29 Sup. Ct. 567, 53 L. Ed. 923.

[3] Nor do corporations or individuals have any vested right that the law shall continue to be unchanged. City of Rochester v. Rochester Ry. Co., 182 N. Y. 117, 74 N. E. 953, 70 L. R. A. 773. The statute of 1868 (Laws 1868, c. 631) discloses no intent to ignore or evade these fundamental propositions. Its plan and paramount purpose was to lay out and improve certain public streets. Auxiliary to this there

was the purpose of contributing symmetry and harmony to a neighborhood area where every prospect pleases and only man is vile.

[4] But the latter purpose was subordinate and at all times subject to the power and duty to maintain and care for the streets in their primary use. This power and duty is continuous, and the Legislature cannot be questioned in its exercise. Under it a property once acquired for street purposes may have added burdens and limitations within the category of street purposes placed thereon, even though a private detriment to the abutting owners be the result. The principle of damnum absque injuria controls. Sauer v. City of New York, 180 N. Y. 27, 72 N. E. 579, 70 L. R. A. 717; Id., 181 N. Y. 521, 73 N. E. 1132, affirmed 206 U. S. 536, 27 Sup. Ct. 686, 51 L. R. A. 1176; Radcliff's Ex'rs v. Mayor of Brooklyn, 4 N. Y. 195, 53 Am. Dec. 357.

The rights of an owner of adjoining land are merely those of an abutter. As such the adjoining owner would be entitled to protection or compensation for certain ancient and established easements, which are based upon necessity, such as the easements of light, air, and access, and also another easement, lately recognized, of subjacent support against the dangers of subway excavations. Matter of Rapid Transit Commissioners, 197 N. Y. 81, 90 N. E. 456, 36 L. R. A. (N. S.) 647, 18 Ann. Cas. 366. With none of these easements was there any interference by the repeal of the restriction in 1897, nor will there be any interference by the erection of the proposed hospital. It is another sort of easement which plaintiff asserts—something like the easement of prospect, which in Coke's Reports is found referred to as "a matter of delight, and not of necessity." Aldred's Case, 9 Coke, 57b. In Donahue v. Keystone Gas Co., 181 N. Y. 313, 73 N. E. 1108, 70 L. R. A. 761, 106 Am. St. Rep. 549, it was pointed out that an abutting owner would have the right to enforce an easement of ornament as against a private trespasser or wanton wrongdoer; it being "subject to interference by no one except by the representatives of the public."

When, however, the power of the Legislature is in question in respect to these easements in an ornamented street, the most that can be granted to such a street over the ordinary street is something of the characteristic of a public park. Yet in a public park there is no property or right in the abutting owners, disabling the Legislature from discontinuing it as a park, even though such owners have, upon the faith of its continuance, erected costly residences about it. This was held in the case of Brooklyn Park Commissioners v. Armstrong, 45 N. Y. 234, 6 Am. Rep. 70. Many of the arguments that are pressed in the case at bar are discussed and disposed of in the opinion of Judge Folger, and the following quotation gains special pertinence, from the fact that both parties in the present case purchased their properties after the enactment of the repealing act of 1897:

"The city of Brooklyn was not the grantor of the neighboring owner, and did not induce him to buy of it, by a purpose declared in creating this park. Any enhanced value of his property was an incidental benefit to him, in its greater readiness of sale at a greater price, and any depreciation in value is

an incidental detriment. The same results flow, in greater or less degree, from the commencement of abandonment of any of the measures of municipal enterprise, whether general or local. It would be going too far to hold, in the absence of any direct and particular relation between the city and the owner of real estate, that, a projected work having influenced for the better the value of his property, he could forbid the abandonment of it, or that there existed any enforceable right, if it was abandoned."

[5] The foregoing disposes of the contention in this case. If, however, there be doubt as to the correctness of that conclusion, plaintiff must still fail; for within the literal terms of the restriction, if the repeal thereof was unconstitutional, this hospital would not fall. The proposed occupancy and use of the defendant's property certainly is not within the uses forbidden by the special enumeration, which extends to 28 different kinds of trades and businesses, each one of which is either inherently dangerous, notoriously offensive, or sharply obnoxious to the moral or æsthetic senses. The scope of the restriction is probably enlarged by the additional prohibition of "any other manufactory, trade, business, or calling"; but, to include the proposed institution within those general terms, it must be found as a fact that the use contemplated will not only be a "business," but that such business will in some wise be "dangerous, noxious, or offensive to the neighboring inhabitants." Rowland v. Miller, 139 N. Y. 93, 34 N. E. 765, 22 L. R. A. 182; Moller v. Presbyterian Hospital, 65 App. Div. 134, 72 N. Y. Supp. 483.

It is to be very strongly doubted whether an institution of the sort contemplated can be legally classed as a "business"; but, if that be so, it cannot be held that it would be a business either "noxious, dangerous, or offensive," in the reasonable sense to be accorded to those terms, any more than it can be held that the establishment of this hospital would create a common-law nuisance. Thus in the Moller Case, supra, an injunction was refused to restrain the erection of a building for the use of the defendant's hospital nurses. In Easterbrook v. Hebrew Ladies' Orphan Asylum, 85 Conn. 289, 82 Atl. 561, 41 L. R. A. (N. S.) 615, a like conclusion was reached in respect to an institution whose aims and methods, as well as the objections raised thereto, were very similar to those in the present case. In both these cases the proposed use was contended to be in violation of restrictive covenants, established by deed, which are almost identical with that now under consideration.

It follows that there must be judgment for the defendant, dismissing the complaint, with costs.