## HANCOCK *et al.* v. GUMM *et al.*

1. The burden of a restrictive agreement does not pass to the assignee where such assignee is a purchaser of the land for value and without notice, actual or constructive, of the agreement.
2. If one with notice sell to one without notice, the latter is protected; or if one without notice sell to one with notice, the latter is protected, as otherwise a bona fide purchaser might be deprived of selling his property for full value.
3. A purchaser of land is conclusively charged with notice of a restrictive agreement or covenant contained in a deed which constitutes one of the muniments of his own title; and generally this is true whether the deed containing such covenant is recorded or not.
(a) In view of the provisions of the Civil Code (1910), § 3320, a deed which constitutes one of the muniments of a purchaser's title is a deed to the same land, and not a deed from his grantor to other land; and this is true even though the prior deed of his grantor conveys a lot or parcel of the same general tract.

No. 2333. JUNE 18, 1921.

Injunction. Before Judge Pendleton. Fulton superior court. November 13, 1920.

Prior to and on November 6, 1908, the Atlanta Banking and Savings Company (for convenience hereinafter referred to as the banking company) owned a tract of land in the city of Atlanta fronting 810 feet on Ponce de Leon avenue and extending south from said avenue 500 feet, more or less, to Blue Ridge avenue.

The tract of land was at the time bounded on the east by Panola street, now Linwood avenue. The banking company offered the frontage on Ponce de Leon avenue for sale. Mrs. C. Helen Plane, through her son, W. F. Plane, entered into negotiations with the banking company for the purchase of a portion of the property fronting on Ponce de Leon avenue. An officer of the banking company stated to W. F. Plane that it was proposed to sell the Ponce de Leon avenue frontage in lots of 100 feet in width, and running south 220 feet to an alley. The agent of the banking company agreed with the agent of Mrs. Plane, that as a part of a scheme for developing the property a building line on Ponce de Leon avenue should be established, said line to be forty feet from said avenue. On November 6, 1908, the banking company and Mrs. Plane entered into the following contract: "Received of Mrs. C. H. Plane fifty ($50.00) dollars as part of purchase-money for a lot beginning at the southeast corner of Ponce de Leon avenue and Panola street, and running thence east along Ponce de Leon avenue one hundred and twenty (120) feet, and extending back south same width as front two hundred and twenty (220) feet, for the sum of thirty-five ($35.00) dollars per front foot. Terms: Twelve hundred ($1,200.00) dollars cash, as soon as titles can be examined, and the rest to be paid one year from date, with interest at 6%. An additional consideration of this trade is that Mrs. Plane is to erect a residence on said lot to cost not less than $4,000.00. It is also agreed by the Atlanta Banking & Savings Company that a building line of forty (40) feet is to be established on this property and all the other property of the Atlanta Banking & Savings Company fronting on Ponce de Leon avenue. Signed in duplicate." On November 19, 1908, the banking company issued its bond for title to Mrs. Plane, binding it to convey to her the property described in the contract, and containing the following covenant: "Part of the consideration of this contract is that no building shall be erected on the property of the Atlanta Banking & Savings Company nearer than forty (40) feet to Ponce de Leon avenue. This meaning that no part of the building shall project over this line; and it is further agreed that Mrs. C. H. Plane's house is not to be built nearer than fifteen (15) feet to the east side of Panola street." This bond for title was duly recorded in the clerk's office of Fulton

superior court on November 27, 1908. On April 1, 1909, the banking company executed and delivered to Mrs. Plane its warranty deed to the property as described in the bond for title, said deed containing the restrictive covenant or agreement inserted in the bond for title quoted above. This deed was duly filed for record on April 3, 1909. After the execution of its bond for title to Mrs. Plane, the banking company had the property fronting on Ponce de Leon avenue platted into eight lots, lot 1 fronting ninety feet on said avenue; lots 2, 3, 4, 5, 6, and 7 fronting one hundred feet on the avenue, and lot 8, the lot sold to Mrs. Plane, fronting 120 feet on Ponce de Leon avenue. On December 16, 1908, the banking company issued its bond for title to W. R. Jester to lots 3 and 4 of the subdivision as shown by the plat of same of " C. E. Kauffman, C. E." This bond for title, which was duly recorded on November 28, 1908, contained the following covenant: " This lot is sold upon the express consideration that no building, or part thereof, shall be built upon same at a less distance than forty (40) feet from Ponce de Leon avenue, nor shall the house thereon cost less than the sum of $4,000.00."

On February 27, 1909, the banking company issued its bond for title to Mrs. Margaret A. Farland, to " lot No. 5 of the O. F. Kauffman plat." This bond for title was transferred, and a deed was made by the banking company to Mrs. Farland's assignee on May 26, 1911, conveying the property as described in the bond for title. Neither the bond for title issued by the company to Mrs. Farland nor the deed executed and delivered by the banking company to Mrs. Farland's assignee contained any restrictive covenant or agreement. On April 21, 1920, Buford D. Hancock, the real plaintiff in error in this case, became the owner of lot 5, which was originally conveyed by the banking company to Mrs. Farland on the date and as aforesaid. The deed to Hancock contained no restrictive agreement. On November 12, 1909, subsequently to the date of the bond for title to Mrs. Farland, the banking company conveyed by warranty deed to W. L. Peel " lot No. 2 of the plat of O. F. Kauffman & Bro." This deed, which was duly recorded on November 17, 1909, contained the same restrictive covenant as appeared in the Jester bond for title. On May 30, 1911, the banking company conveyed by warranty deed to George W. Brine a lot adjoining the lot of Mrs. Plane. This deed did not

give the number of the lot, and did not refer to the Kauffman plat, but did contain a restrictive covenant similar to or identical with the covenant in the Jester bond for title. Subsequently to the date of the bond for title from the banking company to Mrs. Margaret A. Farland, the banking company, by separate deeds, conveyed lots 1 and 6. No restrictive covenant was inserted in either of these deeds. Lots 2, 3, 4, 7, and 8, which were sold with restrictive covenants against the erection of buildings nearer than forty feet to Ponce de Leon avenue, were conveyed, by mesne conveyances, to the present owners, and in these conveyances the same restrictive covenants and the same references to the plat were made as contained in the respective original conveyances from the banking company. On June 5, 1909 (subsequently to the date of the bond for title from the banking company to Mrs. Farland), there was recorded in the office of the clerk of the superior court of Fulton county a plat of the property of the banking company on Ponce de Leon avenue, showing exactly the location, dimensions, and numbers of the lots described in the deeds above referred to, and across said plat was a line parallel with Ponce de Leon avenue indicating a distance of forty feet from said avenue, and marked " building limit." Prior to the purchase of lot 5 by Buford D. Hancock, all the lots in said tract fronting on Ponce de Leon avenue had been built upon, except lot 5. As soon as Buford D. Hancock became the owner of lot 5 he began the erection of a three-story apartment house thereon. Excavations were first made for the walls of the building, commencing at or near the building line and extending toward the rear of the lot. Later, when the building had been partially completed, the contractor and foreman in charge began excavating between the building line and Ponce de Leon avenue. Buford D. Hancock announced his intention to build the apartment house within ten or fifteen feet of Ponce de Leon avenue, and when this fact became known to Mrs. J. A. Gumm, J. H. Bennett, F. A. Quillian, and E. J. Perkerson, they filed an equitable petition in Fulton superior court, alleging that they were the then owners of portions of the property formerly belonging to the banking company and included in the Kauffman plat; that they had improved their respective lots by building suitable residences thereon, and had conformed to the building line contained in the covenants in their deeds made by the banking company, and as shown on the

Kauffman plat, and that all owners of any part of said property fronting on Ponce de Leon avenue had erected their buildings in conformity with said building line. They further alleged that the banking company, before selling any of said property, platted said tracts of land, divided it into lots, and sold the same as residence property; said company placed a building line of forty feet on said plat, so that no building should be built on said property nearer than forty feet to Ponce de Leon avenue, and sold the lots according to said plat and said building restriction. They alleged that the banking company intended to and did establish, with reference to said property, a general building scheme, and that the placing of the building by Hancock in front of all the buildings on said property would be of great and irreparable damage to the plaintiffs' property. They prayed that Hancock and his agents be restrained from erecting said building nearer than forty feet to Ponce de Leon avenue. Subsequently Mrs. Carrie M. Edenfield, Mrs. Nancy W. Crockett, and Mrs. Mary J. Purvis filed their interventions in the cause, alleging that they were owners of property on the south side of Ponce de Leon avenue in the plat of the property sold by the banking company and were interested in the relief sought by the petition in said cause; and they adopted the allegations and prayers of the original petition. They were made parties plaintiff. Before the hearing, Mrs. C. Helen Plane filed her intervention in which she adopted the allegations and prayers of the petition, and in which she also alleged the circumstances and conditions under which she purchased from the banking company the lot now owned by her and fronting 120 feet on Ponce de Leon avenue as hereinabove set out. She was also made a party plaintiff.

The defendants, Buford D. Hancock and his agents, by answer, by evidence, and by objections and contentions at the hearing, urged substantially the following defense: (1) that no general building scheme or general scheme of development involving a building restriction existed, but if any such restriction existed it had not been observed by other owners; (2) that the Kauffman plat was never of record, but if of record it was recorded subsequently to the purchase by Mrs. Margaret F. Farland from the banking company of lot 5; (3) that no building restrictions appeared in the deed to Hancock, or any of the deeds to lot 5, and that Hancock and his predecessors in title to lot 5 had no notice of any such restriction,

if such in fact existed. On the hearing the court granted a temporary injunction restraining the defendants as prayed. To this judgment they excepted, assigning error also on the admission in evidence of the contract between the banking company and Mrs. C. Helen Plane, the bond for title from the banking company to Mrs. Plane, the deed from the banking company to Mrs. Plane, as well as deeds from the banking company to the purchasers of lots 2, 3, 4, 7, and 8 aforesaid, mesne conveyances to the plaintiffs, and affidavits of several persons to the effect that the banking company had established a general scheme of development involving a building restriction as alleged in the petition, and that the several purchasers of lots 2, 3, 4, 7, and 8 bought with the distinct understanding and assurance that a building line had been established on said property:

   *Pettigrew & Jones,* for plaintiff in error.

   *J. V. Poole, McElreath & Scott,* and *F. A. Quillian,* contra.

   GEORGE, J. From the foregoing statement of facts it will be noted that the Atlanta Banking and Savings Company (for convenience herein referred to as the banking company) on November 6, 1908, owned a tract of land in the city of Atlanta, fronting 810 feet on the south of Ponce de Leon avenue, and extending south from Ponce de Leon avenue 500 feet, more or less, to Blue Ridge avenue. The banking company subdivided the tract of land, and offered for sale the several parcels thereof fronting on Ponce de Leon avenue. Admittedly the banking company contracted to sell to Mrs. C. Helen Plane, one of the plaintiffs, a parcel of the entire tract fronting 120 feet on Ponce de Leon avenue and running south 220 feet. In its contract with Mrs. Plane the banking company agreed that " a building line of forty feet is to be established on this property, and all other property of the Atlanta Banking and Savings Company fronting on Ponce de Leon avenue." In its bond for title to Mrs. Plane the banking company covenanted that " part of the consideration of this contract is that no building shall be erected on the property of the Atlanta Banking and Savings Company nearer than forty feet to Ponce de Leon avenue." It appears that the banking company did in fact cause the tract to be subdivided and a plat thereof made. The map or plat introduced in evidence on the interlocutory hearing shows a line forty feet south of Ponce de Leon avenue and parallel thereto, marked " build-

ing limit." Certain of the lots in the subdivision sold by the bank-
ing company to other persons, subsequently to the purchase by Mrs.
Plane of the lot now owned by her, were sold with reference to the
plat, and contained the express covenant that no building or part
thereof should be built on the lot sold at a less distance than forty
feet from Ponce de Leon avenue. As we shall presently notice, the
bond for title executed by the banking company to Mrs. Margaret
A. Farland, under whom Buford D. Hancock claims, contains no
restrictive covenant. It is also conceded that the deeds from the
banking company to the purchasers of lots 1 and 6 in the subdivi-
sion of the property contained· no restrictive covenants, and made
no mention of any building limit or line. While the evidence is
conflicting, we are of the opinion that the judge of the superior
court was authorized to find that the banking company intended to
and did in fact establish a general scheme of development with
respect to the tract of land owned by it on Ponce de Leon avenue,
involving the building restriction hereinabove recited. There is
evidence tending to show that the building restriction had not been
observed by other owners, but there is also evidence to the con-
trary; and upon this disputed issue of fact the judge was author-
ized to find that the building restriction had been observed by
other owners· of lots in the subdivision. Conceding, therefore, that
a general scheme of development involving the building restriction
hereinbefore mentioned existed, and that the restriction had been
observed by other owners, we reach a consideration of the question
involved in this case.

Restrictive agreements are sometimes spoken of as creating cov-
enants running with the land, and sometimes as creating reciprocal
negative easements. Referring to Tulk v. Moxhay, 2 Ph. 774, a
leading case on the subject, Jessel, M. R., in London etc. Co. v.
Gomm, 20 Ch. Div. 562, 583, said that the doctrine of the case,
rightly considered, appeared to him " to be either an extension in
equity of Spencer's Case [5 Rep. 16] to another line of cases, or
else an extension in equity of the doctrine of negative easements,
such, for instance, as a right to the access of light, which prevents
the owner of the servient tenement from building so as to obstruct
the light." Many American courts seem to have adopted the sup-
posed analogy between restrictive agreements and negative ease-
ments. See Peck v. Conway, 119 Mass. 546; Webb v. Robbins, 77

Ala. 176, 183; Hills *v.* Miller, 3 Paige (N. Y.), 254; Trustees *v.* Cowen, 4 Paige (N. Y.), 510, 515; Wetmore *v.* Bruce, 118 N. Y. 319, 322 (23 N. E. 303); Beckworth *v.* Piring, 134 App. Div. 608 (119 N. Y. Supp. 444). It has also been held that such a restrictive agreement creates a covenant running with the land, and binds a subsequent grantee with notice. Holt *v.* Fleischman, 75 App. Div. 593 (78 N. Y. Supp. 647). It appears that the subsequent grantee in that case purchased with notice of the restrictive agreement; and while it was held that the agreement created a covenant running with the land, it was distinctly declared that the covenant was binding upon " a subsequent grantee with notice." The New Jersey courts seem to have rejected the supposed analogy between restrictive agreements and negative easements. Brewer *v.* Marshall, 19 N. J. Eq. 537, 543 (97 Am. D. 679); DeGray *v.* Monmouth Co., 50 N. J. Eq. 329, 339 (24 Atl. 388). For Georgia cases defining and dealing with covenants running with the land, see *Ga. So. R. Co.* v. *Reeves,* 64 *Ga.* 496; *Atlanta, Knoxville &c. Ry. Co.* v. *Mc-Kinney,* 124 *Ga.* 929 (53 S. E. 701, 6 L. R. A. (N. S.) 436, 110 Am. St. R. 215), and cit.; *Horne* v. *Macon Telegraph Pub. Co.,* 142 *Ga.* 489 (83 S. E. 204, Ann. Cas. 1916B, 1212); *Planters Gin Co.* v. *Rea,* 146 *Ga.* 694 (92 S. E. 220). A collection of the leading cases, English and American, on the question will be found in 1 Ames' Cas. Eq. Jur. 147 et seq. The superficial resemblance between restrictive covenants and negative easements is not denied. But, as pointed out by Dean Ames in 17 Harv. Law Rev. 174, 182, " the differences between them are fundamental. An easement is an obligation between two estates. This relation is indicated by the common terms dominant and servient estates. Because the one is obligee and the other obligor, the relation continues the same into whosesoever hands one or both estates may successively pass, and, except for registry acts, whether the subsequent owners bought with or without notice. This cannot be said of restrictive agreements. The burden vanishes as soon as the land subject to the restriction comes to the hands of a purchaser for value without notice of the restriction. Moreover, the burden by the intention of the parties may be limited at the outset to the original promisor. The benefit too, if such is the understanding of the parties to the promise, may be limited to the promisee, or, in England, to the promisee and subsequent occupant of the promisee's land by express assignment

of the contract. The analogy of the negative easement is objectionable for the further reason that easements are confined to real property, but restrictive agreements apply equally to personal property." The writer then adds: " Nor is the doctrine of restrictive agreements illuminated by the suggested analogy to the doctrine of Spencer's Case. Upon covenants running with the land assignees are bound, without regard to notice, or absence of value; whereas notice, or the absence of value, is the very foundation of the subsequent possessor's liability on restrictive agreements. Nor does the doctrine of Spencer's Case apply to personal property." It does not follow, however, that an agreement restricting the use of land is unenforceable in equity. " Although an agreement between owners of land, restricting the use thereof, is not a covenant running with the land or a legal exception or reservation out of it, but simply a personal contract, equity treats it, if valid, as one which goes with the land into the hands of a purchaser with notice, who did not buy innocently or in good faith, and he will be required to observe such restrictive agreement." Lewis v. Gollner (1891), 129 N. Y. 227 (29 N. E. 81, 26 Am. St. R. 516), reversing 14 N. Y. Supp. 362. See also Frye v. Patridge (1876), 82 Ill. 267; Peabody Heights Co. v. Willson (1895), 82 Md. 186 (32 Atl. 386, 1077, 36 L. R. A. 393); Stevens v. Annex Realty Co. (1903), 173 Mo. 511 (73 S. W. 505); Leaver v. Gorman (1890), 73 N. J. Eq. 129 (67 Atl. 111); Maurer v. Riedman (1908), 125 App. Div. 754 (110 N. Y. Supp. 320); DeGray v. Monmouth &c. Co. (1892), 50 N. J. Eq. 329 (24 Atl. 388); Smith v. Graham (1914), 161 App. Div. 803 (147 N. Y. Supp. 773); Hayes v. Waverly & Passaic R. Co. (1893), 51 N. J. Eq. 345 (27 Atl. 648). " The question is not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased." Kirkpatrick v. Peshine, 24 N. J. Eq. 206; DeGray v. Monmouth &c. Co., and Tulk v. Moxhay, supra. Even in England, where, as it seems, the burden of a covenant does not run with the land, an agreement as to the use of land may, under certain circumstances, affect a subsequent purchaser of the land who takes with notice of the agreement. 2 Tiffany on Real Property (2d ed.), § 394. While the reasoning in Tulk v. Moxhay, supra, has been criticised (see Clark on Equity, § 96), the doctrine there announced

has been generally followed. Equity will not, however, impose the burden of the restrictive agreement on one who purchases the land without notice, actual or constructive, of the agreement. One who purchases for value and without notice of the agreement takes the land free from the restrictive agreement. Carter *v.* Williams, 9 Eq. 678; Nottingham Co. *v.* Butler, 16 Q. B. Div. 778, 787; Rowell *v.* Satchell (1903), 2 Ch. 212; Washburn *v.* Miller, 117 Mass. 376; Moller *v.* Presbyterian Hospital, 65 App. Div. 134 (72 N. Y. Supp. 483); and cases cited in 1 Ames' Cas. Eq. Jur. 173, n. 1. If the plaintiff in error is a purchaser of the land without notice, actual or constructive, of the agreement between the banking company and the defendants in error, or either of them, the grant of the injunction cannot be sustained.

The Civil Code, § 4535, provides: "If one with notice sell to one without notice, the latter is protected; or if one without notice sell to one with notice, the latter is protected, as otherwise a bona fide purchaser might be deprived of selling his property for full value." This general doctrine is applicable here. McCusker *v.* Goode, 185 Mass. 607 (71 N. E. 76). There is evidence in the record tending to show that the plaintiff in error, at the time of his purchase of lot 5, had notice of facts and circumstances sufficient to put him on inquiry and to lead to the discovery of the agreement. If, however, Mrs. Farland, through whom the plaintiff in error claims, was without notice actual or constructive, at the time of her purchase of the lot, of the restrictive agreement, the plaintiff in error must be deemed to stand in the position of a bona fide purchaser for value. It is not contended that Mrs. Farland had actual notice or knowledge, at the time of her purchase, of the restrictive agreement or of the general scheme of development involving the building restriction. It is not contended that she had actual notice or knowledge of the contract between the banking company and Mrs. C. Helen Plane, one of the plaintiffs, or that she had such notice or knowledge of the bond for title issued by the banking company to Mrs. Plane or to W. R. Jester. It is conceded that at the time of her purchase of lot 5 none of the lots in the subdivision had been improved. Defendants in error seek to charge Mrs. Farland with notice of the restrictive agreement, by reason of facts and circumstances hereinafter considered. Mrs. Plane's bond for title was duly recorded in the office of the clerk

of Fulton superior court on November 27, 1908, before any other lot in the tract was sold and before the banking company issued to Mrs. Farland its bond for title to lot 5. It is insisted that the record of the bond for title which contained the restrictive agreement is constructive notice. The cases of Holt v. Fleischman, supra, and of Whistler v. Cole, 143 N. Y. Supp. 478 (81 Misc. 519), are cited in support of this contention. In the first case it was ruled, that where the plaintiff's grantor, owning several adjoining lots, conveyed a part of the property to the plaintiff under a deed containing a covenant providing that, on the improvement of her adjoining lots, the house erected thereon should be on a line with the fronts of the present adjoining houses annexed thereto, which deed was duly recorded, and where the defendant acquired title to such adjoining property under a deed in partition between the heirs of the prior grantor, the defendant was bound to take notice of the record of plaintiff's deed, and was therefore bound by the restrictive covenant therein contained, imposing an easement on the adjoining property. In the second case it was held, that a grantee of a lot was chargeable with notice of a building restriction which was contained in the grantor's deed of an adjoining lot to another and covered both lots, where an examination of the records would have disclosed such covenant, and reasonable prudence required such examination to be. made; and that a purchaser is chargeable with notice by implication of every fact affecting the title and discoverable by an examination of the deeds, or other muniments of title of his grantor, and of every fact as to which the purchaser, by reasonable diligence, ought to become acquainted. See also. Lowes v. Carter, 124 Md. 678, (93 Atl. 216) ; Hitt v. Caney Fork Gulf Coal Co., 124 Tenn. 334 (139 S. W. 693) ; King v. St. Louis Union Trust Co., 226 Mo. 351 (126 S. W. 415) ; 2 Pomeroy's Eq. Jur. § 228, note b; 2 Tiffany's Real Property (2d ed.), §§ 398, 567. Under our Civil Code, § 3320, " Deeds, mortgages, and liens of all kinds, which are now required by law to be recorded in the office of the clerk of the superior court of each county within a specified time, shall, as against the interests of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the same property, take effect only from the time they are filed for record in the clerk's office." The rule in this State is that a recorded deed, in order to operate as constructive notice

to a bona fide purchaser of land, must be a link in the purchaser's chain of title. See *Felton* v. *Pitman*, 14 *Ga.* 531; *Coursey* v. *Coursey*, 141 *Ga.* 68 (80 S. E. 462). A deed lying outside of a purchaser's chain of title is not constructive notice of the instrument. There is no difficulty in applying the general rule where a registered deed is executed by one who is a stranger to the title under which the purchaser claims. Where, however, a recorded deed to a lot forming a part of a larger tract contains restrictive covenants which by the terms of the deed apply to other lots in a subdivision or general tract, the application of the rule is not without difficulty. In view of the provisions of the Civil Code, § 3320, quoted above, we are of the opinion that where a recorded deed to a lot forming part of a larger tract contains restrictive covenants which by the terms of the deed are not only to apply to the lot conveyed, but, as in this case, to other lands of the grantor, a purchaser of one of the lots is not charged with notice of the covenant contained in a prior deed from the common grantor to another lot or parcel of the general tract. It is to be noted that the bond for title from the banking company to Mrs. Plane, which contained the restrictive agreement applicable not only to the lot conveyed but to other lands of the grantor, did not specifically describe such other lands; but we do not rest our decision upon this circumstance alone. In the case of *Glorieux* v. *Lighthipe*, 88 N. J. L. 199 (96 Atl. 94, Ann. Cas. 1917E, 484), the New Jersey recording acts are considered, and the recording acts of New Jersey as there construed, so far as the point here involved is concerned, differ in no material respect from our registry acts. The conclusion reached in that case directly sustains the ruling here made. The rule insisted upon by defendants in error would compel us to hold that any restrictive agreement in any deed from the same grantor affecting any land in the same county owned by him, which covenant is expressed in a manner as to indicate what lands it operates upon, is notice from the date of the record of the deed to all subsequent purchasers from the same grantor, although not of the same land. Logically the rule contended for cannot be limited to conveyances by the common grantor of adjoining lots or of parcels of a general tract. We therefore agree with the New Jersey court that it would " impose an intolerable burden to compel him [the purchaser] to examine all conveyances made by every one in his chain of title."

It is insisted, however, that the bond for title from the banking company to Mrs. Farland described the lot as " lot No. 5 of the O. F. Kauffman plat," and that the " O. F. Kauffman plat " became a part of the bond for title as if physically attached. For descriptive purposes the plat did become a part of the terms of the bond for title. *Talmadge* v. *Interstate Building and Loan Asso.*, 105 *Ga.* 550, 554, 555 (31 S. E. 618) ; *Tilley* v. *Malcolm*, 149 *Ga.* 514, 515 (101 S. E. 127). It is, however, unnecessary to decide whether the purchaser would be compelled to examine the map for reservations, exceptions, or restrictions. The only plat introduced in evidence on the interlocutory hearing was a plat made by Kauffman in May, 1909, and filed with the clerk of the superior court of Fulton county in May, 1909. As heretofore pointed out, Mrs. Farland purchased lot No. 5 on February 27, 1909. The reference in her bond for title to the Kauffman plat and the like reference in other conveyances executed by the banking company to lots of the general tract would indicate that a Kauffman plat of the tract was in existence at the time of Mrs. Farland's purchase. However this may be, there is in the record no evidence tending to show that the plat in existence at the date of Mrs. Farland's purchase, even if such plat had then been made, showed any building limit or building line. It seems to be conceded, and such is the case, that the Kauffman plat was never of record, for the reason that the record of such plat in the office of the clerk of the superior court of Fulton county is not authorized by statute. Even if of record, the map or plat offered in evidence, and which was in fact deposited in the office of the clerk of the superior court of Fulton county, was not of record at the date of Mrs. Farland's purchase. It can not be assumed that the plat made in May, 1909, which appears in the record, is an exact duplicate of the Kauffman plat referred to in the bond for title from the banking company to Mrs. Farland, at least so far as the building limit or line shown thereon is concerned. Assuming for the purpose of the case, therefore, that Mrs. Farland was bound to call for the Kauffman plat, and that a plat showing a building limit or line would be sufficient to charge her with notice of the general scheme of development, as contended by defendants in error, the evidence did not authorize the judge to find that the plat of February 27, 1909, if any plat was then in existence, indicated any building limit or restriction whatever. The

plaintiff in error, Hancock, having purchased from one without notice, is protected, and the grant of the interlocutory injunction was unauthorized by the evidence.

We have said that if Mrs. Farland, through whom the plaintiff in error claims, was without notice, actual or constructive, of the restrictive agreement at the time of her purchase of the lot, the plaintiff in error must be deemed to stand in the position of a bona fide purchaser for value. We do not overlook the rule in equity that to constitute one a bona fide purchaser in the full sense, three conditions must concur: he must pay the purchase-money, or at least place himself in a position where he is in all events bound to pay the purchase-money; he must get title; and he must pay the purchase-money and get title before notice of the rights of third persons. See *Gleaton* v. *Wright*, 149 *Ga.* 220 (100 S. E. 72). We are not called upon to decide whether the rule in equity is applicable to the case at bar, because the evidence in the record entirely fails to show that either Mrs. Farland or her transferee had notice or knowledge, actual or constructive, of the restrictive agreement before the payment of the purchase-money and the execution and delivery of the deed by the banking company to the lot involved in this case.

The evidence to the admission of which exception is taken was admissible for the purpose of showing a general scheme of development involving a building restriction, but was inadmissible to show that Mrs. Farland purchased the lot with notice, either actual or constructive, of the restrictive agreement.

*Judgment reversed. All the Justices concur.*