REEVES *et al. v.* COMFORT *et al.*

No. 7900. FEBRUARY 21, 1931.

*A. E. Ramsaur* and *Mitchell & Mitchell,* for plaintiffs.

*Alston, Alston, Foster & Moise* and *William Hart Sibley,* for defendants.

BECK, P. J. Alex. Reeves and Mrs. Mary F. Ivey brought separate suits to the January term, 1930, of Fulton superior court against E. W. Grove Realty Company, Mrs. Sarah Comfort, and

fifty or more other defendants. The two petitions contained substantially the same allegations, except that the plaintiffs owned different lots of land in the Atkins Park subdivision, Atlanta, Georgia, subject to certain restrictions complained of, which they seek to have declared void. The defendants demurred and also filed answers in which they set up that the section in which Atkins Park is located had been zoned by the proper authorities of the City of Atlanta for residence purposes only; and they prayed for affirmative relief by reason of a violation of the restrictions on the part of one of the plaintiffs. On August 3, 1929, an order was passed consolidating the two cases. Defendants amended their answer and set up facts showing that the plaintiff, Alex. Reeves, had rented his house located on his lot in Atkins Park to a tenant who was operating a tea-room in the premises. To the answer as amended the plaintiffs filed demurrers and an answer. On May 2, 1930, a hearing was had on the prayer for injunction; and on the evidence and the pleadings the court passed orders overruling the plaintiffs' demurrers to the amended answer, and granting the injunction as to Reeves. The court also passed an order sustaining defendants' demurrers to the original petition and dismissing the case. To these rulings the plaintiffs excepted.

The original petitions alleged that the plaintiffs were the owners of the described lots in Atkins Park. The deed conveying these lots to Reeves was dated April 19, 1928; and Mrs. Ivey secured title by deed dated November 6, 1924. The restrictions which the plaintiffs seek to have declared void and canceled are set forth in the petition. One of the restrictive covenants, and the most important, is that the party of the second part, the grantee, "will not erect or suffer or license to be erected on the lot above described any commercial or manufacturing establishment or factory or tenement or apartment-house of any kind, at any time; or use or suffer to be used any buildings erected thereon for any such purpose; . . that he will not build more than one residence on any of said lots. . . All of the foregoing covenants shall be covenants running with the land, and shall be kept by the party of the second part, his heirs and assigns, forever."

The petition sets out facts showing the establishment of Atkins Park as an exclusive residential section laid out in the woods away from the City of Atlanta as its boundaries were in 1905; then it

describes the growth of the city, how at the present time the opposite sides of Ponce de Leon Avenue and Highland Avenue are occupied by apartment-houses, churches, stores, and filling-stations, the traffic on the streets being very congested and heavy. The increase in value of this neighboring property as apartment-house sites and business property is set up. It is alleged that the public is deprived of a large amount of taxes, as the property is less valuable as residence property, and is returned for taxation on this valuation; that the conditions have changed the entire neighborhood; that some of the restrictive covenants have been abandoned; that the covenants are perpetual, and violate the law against perpetuities, and are against public policy. The prayers are for cancellation of the restrictive covenants in so far as they apply to that portion of Atkins Park bordering on Highland Avenue, Ponce de Leon Avenue, and Moreland Avenue (now Briarcliff Road); and that defendants be enjoined from bringing any legal action against petitioners to prevent them from using their property in violation of the covenants.

■ The court did not err in dismissing the petitions upon demurrer. "When a grantee accepts a deed and enters thereunder, he will be bound by the covenants contained therein, although the deed has not been signed by him." Civil Code, § 4180. "A purchaser of land is conclusively charged with notice of a restrictive agreement or covenant contained in a deed which constitutes one of the muniments of his own title; and generally this is true whether the deed containing such covenant is recorded or not." *Hancock* v. *Gumm,* 151 *Ga.* 667 (107 S. E. 872, 16 A. L. R. 1003). Restrictive covenants like those involved in the consideration of these cases have always been upheld by the courts of this State, where there was such a violation or threatened violation thereof that would give a court of equity jurisdiction. The present case falls within section 4180, quoted above. Numerous owners of land in this subdivision, as shown by the number of defendants named in this suit, bought their lots of land in full reliance upon the restrictive covenants in the deeds to other purchasers of lots in the same subdivision. In a limited sense, the purchasers of these other lots had a property interest in these restrictive covenants, and a court of equity will not strike down and destroy these covenants merely because under the changed condition of this particular sub-

division or adjoining subdivisions the lots of land in Atkins Park would be more valuable and would yield more taxes to the government if the present owners of the lots in this subdivision could use their land for other than residential purposes. "It is only necessary that the covenant concern the land or its use, and that the subsequent grantee has notice of it. Covenants are so enforced on the principle of preventing a party having knowledge of the just rights of another from defeating such rights." *Rosen* v. *Wolff*, 152 *Ga.* 578, 585 (110 S. E. 877). "Where a covenant is entered into and it is for the benefit of the purchaser, the seller gets an enhanced price for his land; and if he reserve or require a benefit for himself and his assigns, he gets present value therefor. In either case the covenant becomes in effect a part of the estate itself; and whoever takes the estate in one case should have the benefit, and in the other should bear the burden." 2 Washburne on Real Property, 263-4, cited in *Georgia So. R. Co.* v. *Reeves,* 64 *Ga.* 492. See *Raven* v. *Laurens,* 164 *Ga.* 868 (139 S. E. 546).

We have not attempted anything like a complete statement of the cases laying down the principle which we have announced. They are numerous; and we are of the opinion that they are uniform in holding. Whatever effect changed conditions may have upon these restrictive covenants under rules made in certain cases cited in the brief of counsel for plaintiffs in error, even if some of these cases are applicable to a state of facts like that presented in this record, we can not hold that the positive, direct rulings of our courts are affected thereby. The decisions by this court are direct, explicit, and controlling; and moreover we are of the opinion that they state sound principles of law. In view of the provisions of our law and constitution, and under clear principles of equity, the petitioners in this case have no right to set aside and have canceled the covenants in the deeds under which they hold their lots in Atkins Park.

■ The rule against perpetuities made by our statute, which is a codification of the common law (Civil Code, § 3678), deals with estates in land and the vesting of estates, and does not relate to restrictive covenants such as we have in this case.

■ In regard to the question made by the assignment of error upon the judgment of the court granting an injunction against Alex. Reeves and Mrs. Hoarde, as prayed for in the amendment to

the answer, the court is evenly divided, Beck, P. J., and Hill and Gilbert, JJ., being of the opinion that the judgment should be affirmed, and Russell, C. J., and Atkinson and Hines, JJ., being of the opinion that the judgment should be reversed, upon this assignment of error.

*Judgment affirmed. All the Justices concur in the rulings stated in the first two divisions of the opinion. The ruling and judgment referred to in the third division of the opinion is affirmed by operation of law, the court of six Justices being evenly divided in opinion.*