DOOLEY, trustee, *v.* SAVANNAH BANK & TRUST COMPANY, administrator.
FISHER *v.* SAVANNAH BANK & TRUST COMPANY, administrator.

354

Nos. 15103, 15117.   JUNE 6, 1945.

*Johnson & Corish* and *Hester & Clark,* for Dooley.

*R. W. McDuffee,* for Fisher.

*Shelby Myrick,* for Savannah Bank & Trust Co.

BELL, Chief Justice. ■ The two writs of error, being similar with respect to the questions raised, will be dealt with in one opinion.

There is no contention that the petition did not state a cause of action, or even that the plaintiff did not prove its case as laid; the only questions for determination being those raised by the motion to strike the alleged defenses.

There were two amendments to the plaintiff's petition, but the contents of these amendments have not been and need not be stated. The defendants had already filed their answers, and were not required to reply to these amendments. Accordingly, the amendments have no bearing upon the sufficiency of the alleged defenses to withstand the motion to strike. *Watson* v. *Barnes,* 125 *Ga.* 733 (54 S. E. 723); *Brown* v. *Atlanta, Birmingham &c. R. Co.,* 131 *Ga.* 259 (62 S. E. 186); *Kytle* v. *Kytle,* 180 *Ga.* 833 (3) (181 S. E. 81).

■ As to the several defenses alleged, the answers of the defendants were substantially identical, and this being true, it will be sufficient in this connection, and throughout the remainder of this opinion, to refer only to the answer of the defendant Fisher. It may be further stated, however, that in the brief filed in this court by counsel for Dooley, only the first three of the defenses are insisted on, the other three being expressly abandoned. Counsel for Fisher insists upon all six.

The defendant Fisher, in the part of her answer designated as "Defense One," after alleging the facts shown in the preceding statement as to the source of her title, further alleged: "Defendant shows that the said covenant by its own terms is limited to the said lot and portion of lot, and runs only and solely to the said grantors, H. H. Lattimore and William Lattimore; . . that it was placed thereon solely for the benefit of Lattimore and Lattimore; that the plaintiff can not complain and has no standing in this action as to lot 19 and the eastern 15 feet of lot 20, Myers Ward, for the reason that neither the plaintiff nor any persons claiming by or through it or through the said estate of Peter Rabey has ever had any interest or ownership in lot 19 and the eastern

15 feet of lot 20, Myers Ward, and is not a predecessor in title of this defendant. The only person who may complain as to the alleged violation of any covenant, in the event such person is dissatisfied, is a predecessor of this defendant in title to lot 19 and the eastern 15 feet of Lot 20, Myers Ward."

It is a general rule of construction as applied to a pleading, that, when considered on a general demurrer or motion to strike, it is to be construed most strongly against the pleader; and the rule applies to an answer as well as a petition. *Krueger* v. *MacDougald,* 148 *Ga.* 429 (96 S. E. 867). Thus construed, the averments here did not introduce a single new fact, but merely asserted a legal contention as to the scope and effect of the covenant, under the facts and circumstances alleged in the petition. Covenants are to be so construed as to carry into effect the intention of the parties, which is to be collected from the whole instrument, and the circumstances surrounding its execution. *Atlanta, Knoxville &c. Ry. Co.* v. *McKinney,* 124 *Ga.* 929 (3) (53 S. E. 701, 6 L. R. A. (N. S.) 436, 110 Am. St. R. 215). Various factors may enter for consideration in determining the enforceability of restrictive covenants by persons other than the immediate parties. While the existence of a general scheme or plan of development may not be the only basis for the right of others besides the immediate parties, yet where there is such a general scheme or plan, it will bind all of the purchasers inter sese, not only as to restrictions embodied in their respective deeds, but also as to such inhibitions as were embraced within the general scheme of the subdivision, of which they had actual or constructive notice. In other words, under such a plan or scheme, an owner of one lot may enforce the covenant in equity against the owner of another lot who purchased with notice, and each owner will be chargeable with notice, whether the covenant was contained in his immediate deed or not, provided it was contained in the deed from the common grantor under whom he holds. *Hancock* v. *Gumm,* 151 *Ga.* 667 (3) (107 S. E. 872, 16 A. L. R. 1003); *Phillips* v. *Blackwell,* 164 *Ga.* 856 (6) (139 S. E. 547); *Atkinson* v. *England,* 194 *Ga.* 854, 857 (22 S. E. 2d, 798); *Wardlaw* v. *Southern Railway Co.,* 199 *Ga.* 97 (2 a) (33 S. E. 2d, 304). Nor would it be material in such case whether the lot of the complainant or the lot of the defendant was first conveyed by the common grantor. See generally in this connection, 14 Am. Jur. 656, § 318; Chese-

bro *v.* Moers, 233 N. Y. 75 (134 N. E. 842, 21 A. L. R. 1270);
Jennings *v.* Baroff, 104 N. J. Eq. 132 (144 Atl. 717, 60 A. L. R.
1219); Re Union of London & Smith's Bank Limited's Conveyance,
English Court of Appeal, 1 Ch. 611 (89 A. L. R. 797); McComb
*v.* Hanly, 132 N. J. Eq. 182 (26 Atl. 2d, 891, 144 A. L. R. 912).

The petition in the instant case, though not alleging in express
terms that there was such a general restrictive scheme, did show
by allegations of fact that there was such a scheme as to the eight
and a half lots owned by the plaintiff and the defendants. In the
light of these averments, all of which were admitted in the answers,
the allegations in "Defense One," construed most strongly against
the pleaders, must be taken as showing that the covenants were
applicable to all of the land in question, under a general plan or
scheme, and that the covenants would be enforceable in equity as
between the plaintiff and these defendants. Accordingly, the court
did not err in striking the first defense.

■ The defendant alleged the following as "Defense Two:"

"2. Defendant shows that, since the placing of the covenants
upon this property by the said Lattimore & Lattimore, the charac-
ter of the whole neighborhood has so changed that the restriction
is of no value to the land intended to be benefited, and it would
be oppressive and inequitable to enforce the said restriction, owing
to the present use of the whole neighborhood, it having become a
predominantly negro section.

"3. Defendant shows that the north side of Forty-second Street
has no restrictions of any kind. On the north side of said street,
there are seventeen owners of property in the block between Bur-
roughs Street and Florence Street. Of these seventeen owners,
seven are of the white or Caucasian race, while ten are of the col-
ored race. Of the seven white persons who own houses on the
north side of Forty-second Street, several have rented their houses
to colored tenants. The predominate majority of the houses on
the north side of Forty-second Street are occupied by colored ten-
ants. In addition, the white persons who still own property on
the north side are selling, or have contracted to sell, their property
to colored persons who intend to occupy the said houses as resi-
dences.

"4. At the present time there are approximately thirty families
living in houses on the north side of the street, of whom only about

ten are of the white race, the remainder being colored, according to the defendant's information and belief. Because of there being no restrictions on the north side of the street, the neighborhood on the north side has heretofore become predominantly colored, and within a short time will be exclusively colored.

"5. The lots owned by plaintiff and defendant are situated in the block on Forty-second Street between Burroughs and Florence Streets, which is bounded on the west and north by a colored residential section, to which the property in question is immediately contiguous. Forty-second Street is a narrow street only fifteen feet in width. Directly across the street from the defendant's lots the houses are occupied by negroes.

"6. On the south side of Forty-second Street between Burroughs and Florence Streets, where the properties of plaintiff and defendant lie, there are eleven owners of property. Of these eleven owners, five are of the white race and six of the colored race, the six persons of the colored race having acquired the said property even though the alleged covenant as to Caucasians existed in the deeds from Lattimore & Lattimore on all of said property. Of the five white persons, two have already entered into contracts of sale to sell their property to colored persons, these two persons being the defendant and the codefendant, Margarita H. Dooley, trustee.

"7. Defendant shows that there are only six buildings on the south side of Forty-second Street between Burroughs and Florence Streets. Of these buildings, one is a store, with a house adjacent thereto, on the corner of Burroughs Street, owned and occupied by a white person, K. P. Johnson. Adjacent to this property is a four-unit apartment house owned by the petitioner and occupied by white tenants. There is then a distance of approximately forty-five feet separating the property owned by the petitioner and the property owned by the defendant, Margarita H. Dooley, trustee. Immediately adjacent to the defendant Dooley's property is a building owned by the defendant Fisher. Both the codefendant and this defendant have contracted to sell their property to negroes. Immediately to the west of the properties of the defendants are vacant lots, three of which are owned by colored persons and two by white persons. Immediately west of the vacant lots are two bungalows, both of which are owned and occupied by negroes."

As will be seen from these averments, "Defense Two" presents the contention that, because of the influx of negroes, the character of the whole neighborhood has so changed that the restriction against sale to negroes is no longer of any value to the property intended to be benefited, and therefore it would be inequitable to enforce it. The change, it is contended, resulted from two causes: (1) sales to negroes of lands in unrestricted sections in the same general neighborhood, though lying without the restricted area and separated therefrom by streets; and (2) sales to negroes of various lots within the limits of the restricted area itself. Thus the defense has two prongs, even though they may be kindred in nature.

In *Reeves* v. *Comfort,* 172 *Ga.* 331 (157 S. E. 629), it was held that restrictive covenants applicable to land in a subdivision should not be set aside in equity on the ground that, because of changed conditions in the subdivision itself and in other lots of land adjoining the subdivision, the property of the plaintiffs and that of the defendants would be greatly enhanced in value if the restrictive covenants should be annulled. This particular ruling was concurred in by all the Justices, although they were evenly divided on another and different question, namely, whether the operation of a tea room by one of the plaintiffs was a violation of the covenant against use of the property for any "commercial" establishment, as contended in the cross-action.

As to changes without the restricted area, the decision in the *Reeves* case controls the present case. It is controlling in principle, even though the particular changes there involved were commercial, so to speak, rather than racial. In Grady *v.* Garland, 67 App. D. C. 73 (89 Fed. 2d, 817), a case very similar to the present, it was said: "The restriction is for the protection of the property to which it applies, and is not affected by similar conditions which may arise in adjoining property. . . The object of the restriction here was to prevent the invasion of the restricted property by colored people, not the invasion of property surrounding it. If the facts here alleged were sufficient in equity to justify the setting aside of the covenant of restriction, all that would be necessary to defeat such a covenant would be the settlement of a few colored families in the immediate vicinity of the restricted area." Accordingly, in the present case, we may lay aside all allegations with respect to changes without the restricted area. Compare Kenealy

*v.* Chevy Chase Land Co., 63 App. D. C. 327 (72 Fed. 2d, 378); Smith *v.* Lynch, 233 Mich. 6 (206 N. W. 362); Rowland *v.* Miller, 139 N. Y. 93 (34 N. E. 765, 22 L. R. A. 182).

We consider next the allegations as to changes within the restricted area itself.

An examination of the record in *Reeves* v. *Comfort,* supra, discloses that the principal changes there alleged to have occurred within the restricted subdivision consisted of the following acts by owners of property situated therein, all in violation of applicable covenants: selling lots of less width than that prescribed, building two houses on a single lot, building duplexes, extending buildings over the building line, and facing some buildings in the wrong direction. Whether or not the decision in that case, construed in the light of these facts, would be applicable to the changes alleged to have taken place within the restricted area involved in the instant case, and even assuming that it would not be applicable, it does not follow that the part of the answer in the instant case designated as "Defense Two" stated a valid defense.

There are decisions in other jurisdictions to the effect that a change in conditions may prevent the enforcement of the restrictions in equity, where the change is of such character and extent that it is no longer possible to carry into effect the general purpose intended by the restrictive covenants. On the general subject, see 14 Am. Jur. 646-650, §§ 302-307; 21 C. J. S. 934, § 75; 4 Pomeroy's Eq. Jur. (5th ed.), 855, § 1295; 3 Tiffany on Real Property (3d ed.) § 875; 33 Harvard L. Rev. 813, 821; Starkey *v.* Gardner, 194 N. C. 74 (138 S. E. 408, 54 A. L. R. 806); Humphreys *v.* Ibach, 110 N. J. Eq. 647 (160 Atl. 531, 85 A. L. R. 980); Osius *v.* Barton, 109 Fla. 556 (147 So. 862, 88 A. L. R. 394); Barton *v.* Moline Properties, 121 Fla. 683 (164 Sou. 551, 103 A. L. R. 725); Meade *v.* Dennistone, 173 Md. 295 (196 Atl. 330, 114 A. L. R. 1227); Letteau *v.* Ellis, 122 Cal. App. 585 (10 Pac. 2d, 496); Pickel *v.* McCawley, 329 Mo. 166 (44 S. W. 2d, 857). But even under these authorities, unless the change is so fundamental in character as to destroy the general purpose of the restrictive covenants, they will remain in full force and effect. The three decisions last mentioned dealt with restrictions relating to race, and in the Letteau and Pickel cases, it was held in effect that, because the restricted subdivisions had come to be occupied almost ex-

clusively by negroes, despite the restrictive covenants, the covenants were no longer enforceable in equity. The defendants rely upon the rule to which reference has just been made, but, as we view the case, even if this rule should be accepted, the answer did not allege such a radical change with respect to the lots in question as would bar the present plaintiff from seeking relief against the present defendants. There may be a change in a part of a tract without affecting the remainder of it. Vorenberg *v.* Bunnell, 257 Mass. 399 (153 N. E. 884, 48 A. L. R. 1431). It appears that the estate of Peter Rabey, represented by the complaining administrator, owns six lots facing north on 42nd Street, and that situated on these lots is a four-unit apartment house occupied by white tenants. Adjoining this property on the east, and extending to Burroughs Street, is a store with a house adjacent thereto, owned and occupied by a white person. On the west side of this apartment house are the lots of the two defendants with buildings thereon. Still farther west are two vacant lots, which, there being no allegation to the contrary, are presumably owned by white people. West of these are three vacant lots that are owned by negroes, and next are lots which are also owned by negroes, and upon which they have built and now occupy two bungalows. Thus, between the plaintiff's apartment house and Burroughs Street on the east, there is no negro-owned property, while, on the west, there are at least four and a half lots between the plaintiff's property and any lot that is owned or occupied by a negro. The answer places no other negro-owned or negro-occupied property closer to the plaintiff. While it is alleged in the answer that there are six persons of color, and only five white persons, who own land in the same block facing north on West 42nd Street, it appears that the total number of lots owned by the whites is about double the number owned by the negroes; also that the lots owned by the two races respectively are pretty well separated as to location on such street. The fact that the defendants, who are white, have already entered into contracts for the sale of their properties to colored persons can not reduce the number of whites or increase the number of negroes for the purpose of this case, since the very object of the litigation is to determine the validity of these contracts.

Nor can the defendants take advantage of the fact that they have allowed negroes to encroach upon them from the west, until they

have finally become virtual barriers against further encroachment toward the plaintiff. We are fully authorized to put it this way, since the defendants do not attempt in any manner to account for the situation in which they find themselves. Thus, with respect to the right of this plaintiff to seek relief as against the present defendants, the changes alleged could not be said to be so radical and fundamental in character as to destroy the general purpose of the restrictive covenant on which the plaintiff relied; and therefore, even under the theory of law urged by the defendants, the allegations as to changes within the restricted area did not set forth a valid defense. In this view as to the factual element, no decision is necessary, and none is made, as to whether the legal position taken is sound or unsound as a matter of Georgia law.

From what has been said, the court did not err in striking "Defense Two."

■ "Defense Three" was based on acquiescence and estoppel. The following facts were alleged: In 1940 a negro purchased lot 23. In 1939 two negroes purchased the west half of lot 29 and whole lot 30. Shortly thereafter they constructed a bungalow known as 655 West 42nd Street, in which they have resided for the past four or five years. In 1940 or 1941, another negro purchased lots 27 and 28, and constructed a bungalow known as 653 West 42nd Street, in which she and her family have since resided. The names of all of these purchasers were alleged. It was further averred: "3. Several other purchases have been made by negroes in 1941 and 1942 of lots in Myers Ward on the south side of Forty-second Street between Burroughs and Florence Streets, which sales were made without objection on the part of petitioner or any other person; 4. Defendant therefore shows that the petitioner by acquiescence in the alleged violation is estopped from making any complaint as to the proposed sale by the defendant; 5. In reliance upon the acquiescence by the plaintiff in the said sale and occupations of lots by negroes, this defendant entered into a contract with" a named negro woman, and incurred a liability to a named realtor for commissions upon the sale of said property.

It thus appears from the allegations in this defense, when considered with the admitted allegations of the petition, that five lots, whose numbers were given, were sold to negroes, and that two bungalows have been constructed, but that, of all the lots that were

364

sold to negroes, lot 23 was the one nearest to the land of the plaintiff. It also appears that, between that lot and the plaintiff's property, there are at least four and a half other lots that are owned by white people, including the lots of Dooley and Fisher, upon which two residences are situated. It does not appear that the plaintiff or Rabey, the testator, had anything whatever to do with any of the sales to negroes. The mere fact that neither of them complained because of the more remote sales, that is, sales of lot 23 and other lots still farther away, did not affect the plaintiff's right to enjoin sales of lots 18 and 19 and the east half of lot 20, belonging to the defendants and lying between the six lots of the plaintiff and the several lots that had been previously sold to negroes. In other words, the plaintiff would not be estopped by acquiescence from seeking to enjoin violations by these defendants merely because the same covenants may have been previously violated by other and different parties, by more remote sales. See, in this connection, Seawright v. Blount, 139 Ga. 323 (2) (77 S. E. 152); 14 Am. Jur. 644, § 295; 26 C. J. S. 563, § 169; Ward v. Prospect Manor Corp., 188 Wis. 534 (206 N. W. 856, 46 A. L. R. 364); Voorheis v. Powell, 261 Mich. 378 (246 N. W. 154, 85 A. L. R. 932); Deitrick v. Leadbetter, 175 Va. 170 (8 S. E. 2d, 276, 127 A. L. R. 849).

■ In "Defense Four," it was alleged that the covenant against sale or disposition "to any person not of the white or Caucasian race" was invalid under the 14th amendment to the United States constitution, for the reasons: (a) it is an attempt to prevent this defendant from selling the said property to any person that she may desire, based solely upon race or color; (b) it is a discrimination against persons of a race or color; (c) because of the change in character of the neighborhood since the placing of the covenant in the deed to the grantor's predecessor. There was no merit in this defense. 14 Am. Jur. 618, § 208; 26 C. J. S. 511, § 162; Corrigan v. Buckley, 271 U. S. 323 (46 Sup. Ct. 521, 70 L. ed. 969); Grady v. Garland, supra. The case of Carey v. Atlanta, 143 Ga. 192 (84 S. E. 456, L. R. A. 1915D, 684, Ann. Cas. 1916E, 1151), involved a municipal ordinance, and the ruling there made has no bearing upon the validity of a restrictive covenant in a deed.

■ Nor was there any merit in "Defense Five," in which it was averred that the covenant in question had expired by operation

of law under the act of 1935, declaring that "covenants restricting lands to certain uses shall not run more than 20 years in municipalities which have adopted zoning laws." Ga. L. 1935, p. 112; Ga. Code Ann., § 29-301. Properly construed, the act of 1935 was not intended to operate retrospectively, and would not have the effect of terminating a covenant that was already in existence as a valid and binding contract between the parties. Code, § 2-302; *Smith* v. *Pindar Real Estate Co.*, 187 *Ga.* 229 (3) (200 S. E. 131).

"Defense Six" was based on the allegations of fact that had been made in Defenses Two, Three, Four, and Five, inclusive, and prayed for a decree declaring the covenant void and removing it as a cloud on title. From what has been said in reference to the other defenses, the court did not err in striking "Defense Six."

*Judgments affirmed. Jenkins, P. J., Duckworth, Atkinson, and Wyatt, JJ., concur.*