**MARTIN'S LANDING FOUNDATION, INC., et al., Plaintiffs-Appellees,**

v.

**LANDING LAKE ASSOCIATES, et al., Defendants-Appellants.**

No. 82–8185.

United States Court of Appeals, Eleventh Circuit.

June 24, 1983.

**1330**

Gershon, Ruden, Pindar & Olim, Jay E. Loeb, Atlanta, Ga., for defendants-appellants.

Hyatt & Rhoads, Philip S. Downer, George E. Nowack, Jr., Atlanta, Ga., for plaintiffs-appellees.

Before GODBOLD, Chief Judge, and RONEY, Circuit Judge, and PITTMAN *, District Judge.

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by

RONEY, Circuit Judge:

Martin's Landing Foundation, Inc. is a Georgia non-profit corporation comprised of all fee owners of properties in a planned residential community, formed to own, maintain, and administer common properties, the greenbelts, open spaces, walkways and recreational facilities in the development. The Foundation has authority to assess an annual charge against each property to defray its expenses. This case involves the validity of a ceiling placed on the assessment against a certain apartment property in a Supplementary Declaration filed by the developer after the initial declaration was filed. The district court held that the ceiling provision in the Supplementary Declaration was invalid because it conflicted with certain provisions of the Declaration, and awarded a $21,000 judgment to the Foundation. The apartment owners appeal arguing: (1) the statute of limitations bars the Foundation's claim, (2) the ceiling provision of the Supplementary Declaration is valid, (3) the ceiling provision cannot be severed from the rest of the Supplementary Declaration, and (4) defendants' liability is limited to $45.00 per apartment unit for a total of $13,500. We affirm.

"Martin's Landing," a planned residential community in north Fulton County, Georgia, was created when a developer made the real property subject to numerous restrictive covenants in a Declaration, and donated certain land to the plaintiff, Martin's Landing Foundation, Inc. for recreational use by all residents of the community. The Declaration and the Foundation's By-Laws were filed in county real estate records on October 22, 1970. The Declaration gives the Foundation the power to enforce the covenants and restrictions on the properties it controls, including the covenants requiring Foundation members to pay annual assessments for the cost of maintaining common properties.

Defendant Landing Lakes Associates owns the Sails Apartments. Prior to September

designation.

tember 15, 1971, the developer owned the land on which the Sails Apartments now stand. On that date, the developer granted an option to purchase the land to David H. Head. On January 31, 1972, the developer, pursuant to a right reserved in Article II, Section 2(a) of the Declaration, executed a Supplementary Declaration to subject the land where the Sails Apartments now stand to the Declaration. ·The Supplementary Declaration was filed as a public record in Fulton County on February 17, 1972. Among other things, the Supplementary Declaration provided that the maximum annual assessment the Foundation could levy on each apartment unit on the property could not exceed $45.00 without the prior written consent of the owners. At some time prior to July 27, 1972, Mr. Head acquired the apartment land and later conveyed it to defendants Landing Lake Associates.

From 1972 through 1978 there was no dispute concerning the amount of the assessments owed by defendants. During this time, the common properties belonging to the Foundation (pools, a fishing pond, tennis courts, a soccer field, and other areas) were available for the use of all persons residing at Martin's Landing, including the occupants of the Sails Apartments.

The assessment for the fiscal year 1979 was the first annual assessment to exceed the $45.00 ceiling contained in the Supplementary Declaration. Each unit subject to the Declaration was assessed $70.00, so the Foundation billed Landing Lake Associates $21,000 for the 300 apartment units. The Foundation and Landing Lake Associates subsequently negotiated a settlement, in which Landing Lake Associates paid $13,500 as payment in full of the 1979 assessment. The settlement provided for discussions to resolve the question of future assessments, with the understanding that if the discussions did not resolve the matter by August 31, 1979, the Foundation was free to pursue legal action to resolve the dispute.

For the 1980 assessment, the Foundation billed Landing Lake Associates $21,000. An agent for the defendants offered to pay the Foundation $13,500, but the offer was refused. The Foundation sued in Superior Court in Fulton County, Georgia, and defendants removed the action to federal court on the basis of diversity. On cross-motions for summary judgment, the court granted judgment for $21,000 in favor of the Foundation.

## I. Statute of Limitations

The first question on appeal is whether the Foundation's action is barred by the statute of limitations. The Foundation labeled its action as one for money owed and foreclosure of a lien created by a covenant and restriction running with the land. Its prayer for relief asked for a judgment declaring void the $45.00 ceiling in the Supplementary Declaration, and money damages. The parties agree that a two-year limitation period applies under Official Code of Georgia Ann. § 9–3–29 (formerly Ga.Code Ann. § 3–717), which provides:

All actions for breach of any covenant restricting lands to certain uses shall be brought within two years after the right of action accrues. For the purpose of this Code section, the right of action shall accrue immediately upon the violation of the covenant restricting lands to certain uses.

■ We agree with the district court that the cause of action accrued in this case when Article II, section 2(a) which required additional property owners subjected to the Declaration to pay assessments to the Foundation "for their just share of Foundation expenses" was allegedly violated, *i.e.,* "when defendants first refused to pay the annual assessment." The action commenced within two years of that refusal.

■ Contrary to defendants' argument, the Foundation's failure to file a declaratory judgment action within two years of the filing of the Supplementary Declaration did not waive its right to challenge the ceiling's validity in a timely action for damages for failure to pay assessments. In Georgia, statutes of limitations bar the remedy sought by the plaintiff, not the substantive right. *Cohen v. Garland,* 119 Ga.App. 333,

167 S.E.2d 599 (1969) (en banc). We need not decide whether an action for purely declaratory relief would be timely. A declaratory judgment action is not a condition precedent to an action for damages. *See, e.g., Sacks v. Bell Telephone Laboratories, Inc.,* 149 Ga.App. 799, 256 S.E.2d 87 (court considered employee's claim that benefits had been wrongfully terminated, although declaratory relief was no longer appropriate), *cert. denied,* 149 Ga.App. 899 (1979); *Findley v. Vidalia,* 51 S.E.2d 542, 78 Ga. App. 581 (court considered validity of contract, although declaratory judgment to declare the contract invalid was inappropriate), *cert. denied,* 78 Ga.App. 898 (1949). A declaratory judgment does not take the place of other remedies. *Findley,* 51 S.E.2d at 544, (quoting *Mayor and Council of Athens v. Gerdine,* 202 Ga. 197, 42 S.E.2d 567 (1947)). It is an optional, alternative remedy. *Wacker v. Bisson,* 348 F.2d 602, 607 (5th Cir.1965). The Foundation's claim for damages is timely.

## II. *Validity of the Assessment Ceiling*

■ The Sails Apartment property was not originally part of the Martin's Landing project. The Declaration, in Article II, Section 2, allowed the developer to bring additional property within the scheme of the Declaration by filing and recording a Supplementary Declaration. Included in the Supplementary Declaration which added the Sails Apartment property to the scheme of the Declaration is the $45.00 ceiling provision. The district court held that the assessment ceiling was invalid for two alternative reasons: it violated Class A members' voting rights under Article III Section 2(a) of the Declaration, and it was inconsistent with the overall scheme of the Declaration.

Article III established a time period during which the developer would control the management of the Foundation. Two classes of voting membership in the Foundation were created: Class A, which consisted of all property owners subject to the Declaration except the developer, and Class B, which consisted of the developer. During the period of developer control, the Class A members had no voting rights except those specifically set out in Article III, Section 2(a). That section entitled Class A members to vote on "any proposal to change the method of calculating the maximum amount of the annual assessments to be levied by the Foundation." The district court reasoned that the establishment of a fixed maximum annual assessment for some Foundation members and not for others is a change in the maximum annual assessment for all Foundation members. The maximum amount of the annual assessment which may be levied against some Foundation members, the apartment owners, is fixed, while the maximum assessment for other Foundation members is variable. It is clear that the obligations of members with variable assessments are affected by the fact that other members' maximum costs are fixed.

Defendants argue that Article III, Section 2(a), defining the Class A members' voting rights, must be construed harmoniously with Article II, Section 2(a). That section gives the developer the right to provide in a supplementary declaration "such complementary additions and modifications of the covenants and restrictions contained in this Declaration as may be necessary to reflect the different character of the added properties and as are not inconsistent with the scheme of this Declaration," provided that those restrictions do not revoke, modify, or add to the covenants or restrictions of the Declaration with respect to the originally submitted properties. Defendants claim that the different character of the apartment property allowed the developer to add it to the Declaration's scheme on different expense terms without the prior approval of Class A Foundation members. Article II, Section 2(a), however, does not permit the developer to submit additional properties to the Declaration in a manner which bypasses any of the voting rights contained in Article III, Section 2(a). The Supplementary Declaration in this case contained a ceiling provision which changed the method of calculating the maximum amount of annual Foundation assessments,

and Class A Foundation members had a right to vote on that provision.

The district court correctly concluded that the establishment of the assessment ceiling was inconsistent with the general scheme of the Declaration, which requires additional properties submitted to the scheme to pay "their just share of Foundation expenses." It is undisputed that the apartment residents were entitled to use the Foundation's facilities on an equal basis with other Martin's Landing property owners. Although "just share" may not mean "equal share," fixing a $45.00 ceiling for some Foundation members, with no apparent relationship to the assessments to be levied against other Foundation members, seems to defeat the purpose of the "just share" requirement. Defending the assessment ceiling, defendants argue that (1) the Sails Apartments had their own pool and clubhouse, which reduced the extent to which apartment residents used Foundation amenities, (2) the Foundation had lower bookkeeping expenses in collecting a single payment from the Apartments than in collecting assessments from individuals' homes, and (3) the ceiling was set at almost twice the amount of the 1972 assessments. These points may well argue for a lesser assessment against the Apartments as a "just share" of Foundation expenses, but they do not show that the Apartments' "just share" will never be greater than $45.00 annually.

Since we affirm the holding that the assessment ceiling is invalid because it conflicts both with the Article III Section 2(a) voting rights and with the general scheme of the Declaration, we need not address defendants' argument that the ceiling provision violates Georgia law.

### III. *Severability*

Defendants claim that if the assessment ceiling is invalid, the entire Supplementary Declaration is void because the ceiling provision is an integral part of the Supplementary Declaration which cannot be severed. If this is the case, defendants are not subject to any part of the Supplementary Declaration which brought them within the Declaration's scheme, and therefore they are not obligated to pay the Foundation's assessments.

The short answer to this argument is that the original Declaration contains a severability clause. Article X, Section 7 of the Declaration provides:

> Whenever possible, each provision of this Declaration shall be interpreted in such manner as to be effective and valid, but if any provision of this Declaration or the application thereof to any person or to any property shall be prohibited or held invalid, such prohibition or invalidity shall not affect any other provision or the application of any provision which can be given effect without the invalid provision or application, and to this end the provisions of the Declaration are declared to be severable.

That the severability clause applies not only to the provisions of the Declaration itself, but also to the provisions of the Supplementary Declaration, is indicated by Article II, Section 2(a) of the Declaration. That section grants the developer the right to add properties to the scheme through supplementary declarations "which shall extend the scheme of the covenants and restrictions of this Declaration to such properties...." The Supplementary Declaration expressly states that it brings the added property under the scheme of the Declaration. The district court adopted this interpretation. Finding the Supplementary Declaration to be an amendment to the Declaration subject to its provisions, the court applied the severability clause and held that the ceiling provision's failure did not render the entire Supplementary Declaration invalid.

Defendants focus on the Supplementary Declaration, which states that "subject to the specific provisions hereinafter set forth ... the Property is hereby brought under the scheme of the Declaration." Defendants contend this means the Sails property became part of the scheme only if all the specific provisions were valid.

Covenants are construed to give effect to the intent of the parties, which is

**1334**

to be discerned from the whole instrument and the circumstances surrounding its execution. *Dooley v. Savannah Bank & Trust Co.,* 199 Ga. 353, 34 S.E.2d 522, 526 (1945). The intent of the parties is a question of fact. *See McKinney Drilling Co. v. Collins Co.,* 701 F.2d 132, 135 (11th Cir.1983) (interpretation of contract). In this case, the Supplementary Declaration does not expressly state that its provisions are not bound by the severability clause. The developer, who drafted both documents, knew that property added to the scheme was controlled by all the provisions of the Declaration. We hold that the district court's finding that the language "subject to" simply incorporated additional terms, which were severable under the severability clause in the main Declaration, was not clearly erroneous.

IV. *Amount of Liability*

Defendants assert that even if the district court's conclusions are upheld, this Court should limit defendants' liability to $13,500 "since that is all defendants had agreed to pay in the Supplementary Declaration." The assessment ceiling, however, is invalid and severable from the rest of the Supplementary Declaration, which remains effective in submitting the Sails Apartment property to the Declaration. Under the Declaration, defendants are obligated to pay the annual assessments levied by the Foundation. Therefore, the district court correctly held the defendants liable to the Foundation in the amount of $21,000.

AFFIRMED.