72595, 72596. MUNICIPAL ELECTRIC AUTHORITY OF
GEORGIA v. 2100 RIVEREDGE ASSOCIATES, LTD.;
and vice versa.
(348 SE2d 890)

SOGNIER, Judge.

2100 Riveredge Associates, Ltd. (Riveredge) sought a declaration of its rights under a deed executed between Municipal Electric Authority of Georgia (MEAG) and Chase Manhattan Mortgage and Realty Trust (Chase), to whose interest Riveredge partially succeeded. MEAG moved for summary judgment asserting that the contested language in the deed, involving a restrictive covenant, was unambiguous and that, under its interpretation, the restriction had terminated. Riveredge made an oral motion for summary judgment also asserting that the language was unambiguous but that under its construction of the deed the restriction was still valid. The trial court determined that the contested language was ambiguous and that questions of fact remained as to the intent of the parties. We granted MEAG's application for interlocutory appeal and Riveredge filed its cross-appeal.

MEAG acquired by deed a portion of land purchased from a larger tract owned by Chase. Most of the remainder of the tract (Chase tract) was subsequently sold to a third party from whom Riveredge acquired its property. The deed from Chase to MEAG provided in pertinent part: "The within conveyance of the Property is hereby made subject to the restriction that for a period of twenty years following the date of this instrument, the Property shall be used solely for office and related purposes with an aggregate interior office building area, in one or two buildings, not to exceed 100,000 square feet total; . . . Furthermore, in the event any other parcel within the tract of land owned, on the date hereof, by Grantor (from which the Property has been conveyed) shall be approved by competent authority for any use not permitted in an M-1 zone, as presently constituted in the zoning resolution of Fulton County, Georgia, then the foregoing

use restriction shall terminate."

The "M-1" light industrial zoning regulations referenced by the deed are contained in Article XVI of the Fulton County Zoning Resolutions (Article XVI) which is organized into seven sections, including Section 2 "Use Regulations" and Section 4 "Height Regulations." Subsequent to the execution of the subject deed, permission was obtained from the zoning authority and buildings were constructed on Chase tract parcels which exceeded the height regulations in Section 4 of the "M-1" regulations. MEAG also has obtained approval to develop its property by constructing a building in excess of the eight-story limitation in Section 4. However, the design of MEAG's eight-plus story building would necessitate an area density exceeding 100,000 square feet. Accordingly, Riveredge brought this action to obtain a declaration as to the validity of the above-deed restriction.

MEAG contends the trial court erred by denying its motion for summary judgment because, under MEAG's interpretation of the language of the deed, the use restriction has terminated. MEAG contends that due to the erection of the buildings exceeding eight stories or 100 feet in height on Chase tract parcels, the termination provision in the deed is now invalid on the basis that the square footage/height restriction in the deed constitutes a "use" restriction.

" 'As a general rule, the owner of land in fee has the right to use the property for any lawful purpose, and any claim that there are restrictions upon such use must be clearly established. Limitations or restrictions by implication are not favored, and must be strictly construed. [Cits.]' " *Jordan v. Orr*, 209 Ga. 161, 163 (1a) (71 SE2d 206) (1952). "In the construction of an instrument, 'the whole instrument is to be construed together so as to give effect, if possible, to the entire deed . . . and the construction which will uphold a deed in whole and in every part is to be preferred.' [Cits.]" *Shoaf v. Bland*, 208 Ga. 709, 711 (2) (69 SE2d 258) (1952). Applying the rules of construction set forth in *Shoaf*, supra, it is readily apparent that the word "use" and its permutations constitute the pivotal term in the interpretation of the deed language.

If the word "use" as employed in the termination provision includes only the two matters restricted in the deed, namely, that the property be used solely for office and related purposes and that the interior office building area of the one or two buildings constructed not exceed 100,000 square feet total, then MEAG's contention that the termination provision is invalid must fail. First, MEAG's argument fails because it is uncontroverted that the other buildings on Chase tract parcels are being utilized solely for office or related purposes and thus as to this restriction the termination provision is still viable. Secondly, assuming arguendo that the "area" restriction is a "use" restriction, Article XVI contains no mention of either square

footage or density and thus these matters cannot be defined as "use[s] not permitted in an M-1 zone." Contrary to MEAG's argument, there is nothing in the plain language of the deed to equate the 100,000 square foot area restriction imposed on MEAG with the eight story or 100 feet height restriction in Section 4 of Article XVI. To illustrate this point: Should a building with 600,000 square feet but only 6 stories high be constructed on a Chase tract parcel it would not conflict with the height regulations in Section 4 of Article XVI, whereas the identical building on MEAG's property would nevertheless violate the restrictive covenant in the deed. Thus, it is unnecessary to address Riveredge's and MEAG's arguments concerning whether a "square footage" restriction or an "area" restriction is a "use" restriction since, regardless, it is not mentioned in Article XVI and could not, under any circumstances, constitute "any use not permitted in an M-1 zone."

Although this construction of the deed language affords no relief to MEAG, an alternate construction of the deed also presents itself. If the word "use" as employed in the termination provision phrase, "any use not permitted in an M-1 zone," is not limited by the two restrictions in the deed, it opens the possibility that *any* use not allowed by the zoning regulations could serve as the trigger to terminate the restrictions on MEAG's property. Accordingly, MEAG argues that the approval for construction of buildings in excess of the eight story 100 feet Section 4 height restrictions on Chase tract parcels — "any use" not permitted in an "M-1" zone — invalidated the otherwise unrelated restrictions in the deed.

Article XVI of the "M-1" LIGHT INDUSTRIAL DISTRICT REGULATIONS contains seven sections which are organized as follows: 1. General Provisions; 2. Use Regulations; 3. Parking and Loading Regulations; 4. Height Regulations; 5. Area Regulations; 6. Residential Floor Area Regulations; 7. Sign Regulations. Height is not included in the Section 2 "Use Regulations," and it is uncontroverted that no Chase tract parcel has obtained approval by competent authority to change from office or related purposes to any of the 34 "uses" listed in Section 2. (Examples of the Section 2 uses being: slaughterhouse, blast furnace, petroleum refining, truck terminals.) Thus, the validity of MEAG's construction of the deed is dependent upon an interpretation to the effect that the phrase "any use not permitted in an M-1 zone" is not limited to the uses so denominated in Section 2 of Article XVI but also includes the height regulations in Section 4 and, by logical extension, all the remaining sections as well. In the broadest sense of MEAG's argument, this means that if an owner of any Chase tract parcel obtains approval to erect on that parcel more than one free standing sign in front of the property (Section 7) or approval to provide less than one parking space per each 600

square feet of floor area in the commercial building (Section 3 (4)), then the restrictive covenant in MEAG's deed would be automatically terminated and, subject solely to approval by zoning authority, MEAG could build a 600,000 square foot abattoir next to Riveredge's office complex. We do not need to address the absurd possibilities of this argument since we agree with Riveredge that the height regulation in Section 4 is not a "use" restriction in an M-1 zone and therefore the restrictive covenant in the deed is still valid.

Although both restrictive covenants and zoning ordinances contain building and use restrictions, "there is an analytical distinction between building and use restrictions." *Payne v. Borkat*, 244 Ga. 615, 617 (1) (261 SE2d 393) (1979). MEAG, in its argument concerning its interpretation of the amorphous word "use," fails to recognize that an office building with six stories has the same *use* as an office with sixteen stories: any difference in square footage could hardly be said to affect the basic manner ("use") in which the structure is employed ("used"). The distinction between "building" restrictions and "use" restrictions acknowledged in *Payne*, supra, has been noted by other authorities in the field of zoning variances (waivers by zoning authorities of zoning restrictions). Building restrictions come within the province of "area variances" which involve such matters as setback lines, frontage requirements, height limitations, lot-size restrictions, density regulations, and yard requirements. See Anderson, American Law of Zoning, 2nd ed. (1977), Vol. 3, §§ 18.06; 18.07. "Use variances are customarily concerned with 'hardship' while area variances are customarily concerned with 'practical difficulty.' A use variance is one which permits a use other than that prescribed by the zoning ordinance in a particular district. *An area variance has no relationship to a change of use*. It is primarily a grant to erect, alter, or use a structure for a permitted use in a manner other than that prescribed by the restrictions of the zoning ordinance." (Emphasis supplied.) *Alumni Control Bd. &c. v. City of Lincoln*, 137 NW2d 800, 802 (179 Neb. 194) (1965). See also *Consolidated Edison Co. v. Hoffman*, 374 NE2d 105 (43 NY2d 598, 403 NYS2d 193) (1978). Thus, it appears that Sections 3-7 of Article XVI fall within the province of area variances — building restrictions — and only the Section 2 Use Regulations concern the regulation of "use" as defined as "(a) any purpose for which a building or other structure or a tract of land may be designed, arranged, intended, maintained, or occupied, or (b) any activity, occupation, business, or operation carried on, or intended to be carried on, in a building or other structure or on a tract of land." See Anderson, supra, § 16.11.

Therefore, since it appears that none of the buildings on Chase tract parcels is being used for a purpose limited by the M-1 regulations, the use restriction in the deed has not been terminated. The

language of the deed does not support MEAG's argument that because a "special use permit" is required in order to exceed the height restriction in Section 4 of the M-1 Regulations, that height or density constitutes a "use" as employed by the parties executing the deed. Nor do we find any merit in MEAG's argument that the restrictive covenant is invalid because of changed conditions. "[U]nless the change is so fundamental in character as to destroy the general purpose of the restrictive covenants, they will remain in full force and effect." *Dooley v. Savannah Bank &c. Co.*, 199 Ga. 353, 361 (3) (34 SE2d 522) (1945). There has been no "general change in the neighborhood," see *Antill v. Sigman*, 240 Ga. 511, 512 (2) (241 SE2d 254) (1978), so as to render the "office and related purposes" restriction void. Nor do we agree with MEAG that the construction of buildings exceeding 100 feet in *height* renders void a restrictive covenant regulating *area density*. See *Dooley*, supra. Therefore, the trial court correctly denied MEAG's motion for summary judgment in Case No. 72595. However, the trial court erred by denying Riveredge's motion for summary judgment in Case No. 72596. Accordingly, the trial court's order is reversed.

*Judgment affirmed in Case No. 72595. Judgment reversed in Case No. 72596. Banke, C. J., and Birdsong, P. J., concur.*

DECIDED SEPTEMBER 3, 1986 —
REHEARING DENIED SEPTEMBER 18, 1986 ▮▮▮▮▮▮▮▮

*L. Clifford Adams, Jr., John G. Parker, Caryn R. May*, for appellant.

*Charles L. Gregory, Edward S. Sams, Anne S. Infinger*, for appellee.