### S01A0784. USRY et al. v. FARR et al.
(553 SE2d 789)

FLETCHER, Chief Justice.

At issue in this appeal is when title to the remainder interest under the will of Watson Usry vested. On summary judgment, the trial court held that the remainder vested at the time of Usry's death and not at the death of the life tenant. Because Usry's will expressed the intention of providing for those who survive him and all five grandchildren survived him, we affirm.

Watson Usry died in 1967. The relevant clause of Usry's will provided successive life estates in his lands, first to his wife Lucille and then to their children, with the remainder to his grandchildren. Usry had three children, the last of whom died in 2000. There are five appellants: the four children of Usry's son Jack, and Jack's widow, Evelyn. Usry's fifth grandson, Hoyt, died in 1970 leaving three young children, all of whom were alive at the time of Usry's death.[1] Hoyt's three children are the appellees. Appellants claim that the remainder vested upon the death of the last life tenant and not upon the death of Usry. Therefore, because they are the only grandchildren who survived the life tenants, they take all lands under the will. Appellees contend that the remainder vested upon Usry's death, and that Hoyt, who survived Usry, had a vested interest under the will, and therefore his children stand in his shoes and take under the will along with appellants.

1. The construction of a will is a question of law for the court.[2] The cardinal rule for construing wills is to ascertain and give effect to the testator's intent.[3] Item Three of the will provided,

> I will, bequeath and devise all of the land, with improvements thereon, which I may own at my death to my Wife, LUCILLE, to be hers for and during her lifetime, and at her death same is to go to my children who may survive my wife, and to my grandchildren with restrictions as follows: Any of my children taking land under this Item shall have a life interest therein, share and share alike, with any grandchildren who take hereunder taking the part which their father

---

[1] A family tree is attached as an appendix.

[2] *Timberlake v. Munford*, 267 Ga. 631, 632 (481 SE2d 217) (1997).

[3] OCGA § 53-4-55; *Timberlake*, 267 Ga. at 632.

or mother would have taken. Upon the death of my last surviving child title in fee simple to said lands shall vest in my grandchildren, per stirpes and not per capita.

The first sentence of Item Three establishes a life estate first in Usry's wife Lucille and then in the children who survive Lucille. This sentence imposes a requirement that the children survive Lucille before taking under Item Three. In contrast, no requirement that the grandchildren survive the life tenants is imposed. Therefore, at Usry's death, fee simple title vested in his five grandchildren, who were all alive at that time. The possessory interest vested when Usry's son Ned, the last life tenant, died in April 2000. At that time, the grandchildren were entitled to take possession, with the appellees taking the share that had vested in Hoyt.

The testator's intention that the only survivorship requirement apply to his life appears expressly in Item Eight of the will. In that provision, Usry declared that "my entire plan of disposition is the result of a conscientious effort to provide for the welfare of my loved ones who survive me, and to fairly divide and distribute the worldly goods for which I have worked so hard." Because we must construe the will as a whole, we must consider this clause in construing the remainder of the will.[4] Usry's stated intention of providing for those who survive him is fatal to the claim of appellants who would defer vesting well beyond the death of Usry until the conclusion of the life estates.

The dissent's concern that this construction provides an anomalous result is not well-founded. The testator himself decided to leave successive life estates to his widow and children. Obviously, if his children were to enjoy a life estate that followed their mother's life estate, the children had to survive their mother. Because the testator decided that his children were to enjoy only a life estate, there is nothing unusual about his further providing for title to vest in his loved ones who survive him.

2. Usry's express intention with regard to a survivorship requirement is consistent with the statutory rule in Georgia favoring vesting of title as of the time of the testator's death.[5] Appellants contend that the last sentence of Item Three demonstrates an intention that the remainder vest, not at the testator's death, but at the conclusion of the life estates. However, this Court has repeatedly held that virtually identical language is not sufficient to divest the remainder share from one who survives the testator but predeceases the life tenant.[6]

---

[4] *Timberlake*, 267 Ga. at 632 (courts must consider will as a whole).

[5] OCGA § 44-6-66.

[6] *Witcher v. Witcher*, 231 Ga. 49 (200 SE2d 110) (1973); see also Verner F. Chaffin, *Studies in the Georgia Law of Decedents' Estates and Future Interests*, 350-356 (1978).

In view of the strong preference in Georgia for early vesting, the language required to render a remainder contingent upon surviving the life tenant must be clear and unambiguous.[7] The last sentence of Item Three fails to meet this standard when considered along with Item Eight. To the extent that this sentence would permit a construction favoring a contingent remainder, it must give way to the construction favoring a vested remainder, where both constructions are possible.[8]

We construe the final sentence of Item Three, and similar language in Item Five,[9] to refer to the time the grandchildren take possession in the land and become entitled to enjoy the title to the remainder, which had vested at Usry's death. This construction is consistent with our case law that recognizes that a vested remainder will have both a vesting of title and a vesting of possession.[10]

3. Appellants also rely on a deed of assent executed by Usry's widow as executrix in 1968. That deed refers to property devised in Usry's will as being left to "the living grandchildren of Watson Usry." The deed of assent, prepared after the testator's death, is irrelevant to determining the testator's intent.[11]

*Judgment affirmed. All the Justices concur, except Thompson, J., who concurs in the judgment only, and Benham, Carley and Hines, JJ., who dissent.*

APPENDIX.

Watson Usry – Lucille
(d. 1967)      (d. 1988)

| Jack – Evelyn | Ned | Katherine – Hoyt Farr |
|---|---|---|
| (d. 1962) | (d. 4/00) | (d. 3/00) |

| Daniel | David | Jaclyn | Kathleen | | Hoyt, Jr. – |
|---|---|---|---|---|---|
| | | | | | (d. 1970). |

| | Jennifer | Gregory | Natalie |
|---|---|---|---|
| | (b. 1962) | (b. 1965) | (b. 1967) |

---

[7] *Britt v. Fincher*, 202 Ga. 661, 664 (44 SE2d 372) (1947); Mary F. Radford, *Redfearn Wills and Administration in Georgia*, § 13-13 (6th ed. 2000).

[8] *Miller v. Brown*, 215 Ga. 148, 151 (109 SE2d 741) (1959).

[9] "If my daughter-in-law, EVELYN, has not married again by the time the title to my land vests in my grand-children, as per Item Three of this Will, then I desire that she take a child's part. . . ."

[10] *Crawley v. Kendrick*, 122 Ga. 183, 184 (50 SE 41) (1905).

[11] *Young v. Young*, 202 Ga. 694, 702 (44 SE2d 659) (1947) (testator's intention must be ascertained from four corners of the will).

CARLEY, Justice, dissenting.

The law of Georgia favors the early vesting of remainders "in all cases of doubt," but not where "a manifest intention to the contrary shall appear." OCGA § 44-6-66. "[T]his preference for vested interests is only a presumption and will give way to a clear intent to make the interest subject to a contingency." Verner F. Chaffin, *Studies in the Georgia Law of Decedents' Estates and Future Interests*, p. 332 (1978). Because the controlling terms of Watson Usry's will leave no doubt of his clear intent that his grandchildren must survive their parents to inherit, their remainders are contingent and the preference for early vesting does not apply in this case. Therefore, I dissent to the majority's affirmance of the trial court's erroneous ruling.

Item Three of Mr. Usry's will creates a life estate in his widow and then in those of their children who survived her. Thus, he clearly intended that his children's interests not vest at his death, but at the death of his wife. With regard to the grandchildren, Item 3 provides: "Upon the death of my last surviving child *title in fee simple to said lands shall vest* in my grand-children, per stirpes and not per capita." (Emphasis supplied.) A "fee simple" estate " 'is the entire and absolute property in the land; no person can have a greater estate or interest.' [Cit.]" *Houston v. Coram*, 215 Ga. 101, 102 (1) (109 SE2d 41) (1959). Thus, Item 3 clearly expresses the testator's intent that his grandchildren would have *no* interest in the property until such time as the entire and absolute estate passed to them at the death of the last life tenant.

Despite this clear expression of Mr. Usry's intent, the majority concludes that what he really meant was for title to pass to his grandchildren at his death and that only possession be postponed until the death of his last surviving child. This is patently erroneous, as *title* cannot vest both at the time of the testator's death and then again at the death of the last life tenant. As the majority correctly notes, "there are two vestings of a *vested remainder*," a vesting of title and a vesting of possession. (Emphasis supplied.) *Crawley v. Kendrick*, 122 Ga. 183, 184 (1) (50 SE 41) (1905). However, the issue here is whether the grandchildren's remainders are vested *or* contingent. OCGA § 44-6-61. The will does not specify that their interests vest at the testator's death with possession delayed until the last life tenant dies. The instrument unambiguously provides that the grandchildren take no "title" until that time. One can hold title without possession or possession without title. However, fee simple title in the grandchildren vests either at the time of Mr. Usry's death *or* when his last child dies. The will expressly indicates that his children must survive his widow to take a life estate and, by postponing the vesting of *title* in his grandchildren, implicitly requires that they survive the life tenants. See *Ruth v. First Nat. Bank of Atlanta*, 230 Ga. 490, 493

(197 SE2d 699) (1973).

> The importance of *Ruth* is that the court did look to the will as a whole rather than focusing on the particular words used in the bequest, and determined that the testator's intention, even though he used the word "absolutely," was that the bequest was not to vest until the death of the testator or the life tenant, whichever last occurred.

Chaffin, supra at p. 355 (1978). See also *Fourth Nat. Bank of Columbus v. Brannon*, 227 Ga. 191, 192 (1) (179 SE2d 232) (1971).

The error in the majority's analysis is that it equates the absence of an *express* requirement for survivorship as conclusive evidence of the testator's intent to create vested, rather than contingent, remainders. However, the law favors the early vesting of remainders only in cases of doubt, and no doubt arises simply because the testator did not specifically provide that the remaindermen must survive to take. A postponement of the vesting of title can be the functional equivalent of a survivorship requirement. See *Wells v. Ellis*, 184 Ga. 645, 646 (1) (192 SE 380) (1937). The applicable rule of construction is to ascertain the testator's intent based upon a consideration of the entire will and the circumstances surrounding its execution. *Timberlake v. Munford*, 267 Ga. 631, 632 (481 SE2d 217) (1997). Contrary to the majority opinion, the testator's will did not provide "for title to vest in his loved ones who survive him." In Item 8 of Mr. Usry's will, he expressed only the general intent "to provide for the welfare of my loved ones who survive me. . . ." However, the relevant inquiry is the construction of the specific provisions of the instrument so as to determine how he intended to provide for them. There is a distinction between the expression of a general testamentary intent to provide for survivors, as in Item 8, and a specific provision for the vesting of title in those who survive, as in Item 3. In Item 3, Mr. Usry created life estates for his widow and children, and provided that his grandchildren would not take title until the death of the last surviving child. Thus, he obviously did not intend to provide for the welfare of all of his survivors, since only those children who outlived his widow were to take life estates. Under the majority's anomalous construction, the remainder to a grandchild who survived Mr. Usry and died before his or her own parent would be vested, but the parent of that grandchild would have no interest unless he or she outlived Mrs. Usry. Based upon the will as a whole, the more reasonable interpretation is that the testator intended all remainders to be contingent upon survival until the time of vesting. Mr. Usry accomplished that intent by expressly providing that his children survive his widow and by specifically providing that title would not pass to his grandchil-

dren until the death of the last life tenant.

The authority cited by the majority does not support its holding. In *Witcher v. Witcher*, 231 Ga. 49 (200 SE2d 110) (1973), the will did not expressly provide that title would not vest in the testator's four sons until the death of the widow, but it did specify that, in the event a son predeceased the testator or his widow, the child or children of that deceased son would take the dead parent's share. Only three sons outlived their mother, and they urged that the effect of the survivorship language was to create contingent remainders so that the widow of their deceased brother took nothing. This Court rejected that construction. Because the testator did not specify when his sons' interests vested, the will "created a vested remainder interest in a class composed of the testator's sons" and the survivorship language was intended to "prevent a lapse of the devise to any son who died prior to the testator's death, leaving a child or children." *Witcher*, supra at 51. Thus, that case is entirely consistent with the principle that "words of survivorship shall refer to those survivors living at the time of the death of the testator in order to vest remainders unless a manifest intention to the contrary shall appear." OCGA § 44-6-66.

> Since no language in the will plainly manifested an intention to divest the share of a son who survived the testator but died before the life tenant leaving no children to take the substitutionary gift, the deceased son's remainder was not divested and therefore descended to his heirs.

*Chaffin*, supra at p. 351 (1978). *Witcher* does not hold that, in the absence of any express survivorship language, remainders must be construed as vested. The last sentence of Item 3 of Mr. Usry's will contains no survivorship language, but it does expressly provide that his grandchildren take no interest until the death of the last of his children. Thus, this case is controlled by the principle that

> the language of each particular instrument construed as a whole, showing the intent and purpose of the grantor or testator, must be given effect; and if the instrument creating the remainder should by specific language, consistent with a clear intent of the maker as gathered from the entire instrument, make the *remainder itself* subject to a contingency, the intent of the maker, if lawful, will control.

(Emphasis in original.) *Britt v. Fincher*, 202 Ga. 661, 664 (4) (44 SE2d 372) (1947). Compare *Miller v. Brown*, 215 Ga. 148 (109 SE2d 741) (1959) (will which did not specify time of vesting in remaindermen construed to create vested remainders at time of testator's death).

The trial court erred in misapplying the preference for early

vesting so as to violate the testator's manifest intent to create contingent remainders for his children and grandchildren. Because the majority endorses, rather than corrects that error, I dissent.

I am authorized to state that Justice Benham and Justice Hines join in this dissent.

DECIDED OCTOBER 1, 2001 —
RECONSIDERATION DENIED NOVEMBER 5, 2001.

*Johnston, Wilkin & Williams, Wendell E. Johnston, Jr., William J. Williams*, for appellants.

*Carl H. Hodges & Associates, Carl H. Hodges, Timothy K. King*, for appellees.