**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 12, 2013**

# In the Court of Appeals of Georgia

A13A1508. WILKES et al. v. FRASER.

MCMILLIAN, Judge.

James David Wilkes ("Wilkes"), individually and as executor of the Estate of Ricky Louie Dixon ("Dixon"), appeals the trial court's final judgment in an action filed by Nell Wilkes Fraser ("Nell") seeking a declaration determining the rights to certain property conveyed by her father, D. W. Wilkes ("D. W."), by deed dated May 23, 1936 (the "Deed").[1]

Nell's verified declaratory judgment complaint, filed on July 30, 2012, asked the trial court to enter a judgment declaring her to be the owner of "a one-half

---

[1] Because this case involves two generations of D. W.'s descendants, we will refer to his children by their first names and his grandchildren by their last names in an attempt to clarify the parties' familial relation to one another. A chart showing the familial relationships is attached as Appendix 1 to this opinion.

undivided interest," along with Wilkes, in the property conveyed by the Deed. Wilkes, individually and as executor of Dixon's estate, filed a verified answer on September 27, 2012, asserting that the property should be shared among Nell, Dixon's estate, and Wilkes, each taking a one-third undivided interest in the land. On October 24, 2012, the trial court issued an order granting Nell and Wilkes each a one-half interest in the property,[2] and Wilkes appealed.

"The construction of a deed presents a question of law which [the appellate court][3] reviews de novo. In construing a deed, the court's overriding goal is to ascertain and give effect to the intent of the parties. (Citations omitted.) *Second*

_____

[2] The record contains no motion filed by either party and no hearing or trial transcript. Thus, we must presume the trial court based its ruling primarily on the parties' verified pleadings. In any event, the issue before us is one of law and the parties apparently stipulated to the underlying facts.

[3] Although Wilkes originally filed his appeal in the Supreme Court of Georgia, that Court determined that it lacked subject-matter jurisdiction because a declaratory judgment action is not per se an equitable proceeding. The Supreme Court further found that the fact that the appeal requires construction of a deed does not bring it within the Court's jurisdiction, "particularly where the opposing parties are not both claiming presently enforceable fee simple title to the same real property and neither party is seeking possession. [Cits.]" We note that the parties do not dispute that Nell and Wilkes, individually, share fee simple title and the right to possession to the property, and the only issue is whether Dixon's estate also has an interest in the property. See *Kinnon v. Mercer*, 222 Ga. 309 (149 SE2d 685) (1966) (no jurisdiction in Supreme Court when issue is whether plaintiff in possession had fee simple title or a life estate with a remainder interest to his daughter under the terms of a deed).

*Refuge Church of Our Lord Jesus Christ, Inc. v. Lollar*, 282 Ga. 721, 724-725 (2) (653 SE2d 462) (2007). See also *Simpson v. Brown*, 162 Ga. 529, 530 (134 SE 161) (1926) (the cardinal rule in construing a deed is to determine the parties' intent).

Under the terms of the Deed, which was both executed and recorded on May 23, 1936, D. W. "reserve[d] unto himself the management, control, profits, use and possession of [a certain parcel of 83 acres of land (the "Property")] and at his death to [his son, Ralph Wilkes ("Ralph"),] during his life and at his death to his children." The Deed also provided that "[s]hould the said Ralph Wilkes die without issue in that event the lands shall go to my other living children or their children."

D. W. died on August 17, 1938, and was survived by five children, none of whom had yet married or had children. See Appendix 1. His two sons, Ralph and Earl Wilkes, both died without issue, and his three daughters, Georgia Wilkes Dixon ("Georgia"), Davie Lee Wilkes Wilkes ("Davie Lee"), and Nell, later married and had at least one child each. At the time of Ralph's death on December 15, 2009, Nell was the only one of D. W.'s other children still surviving, and Wilkes, who is Davie Lee's son, was the only other of Ralph's surviving lineal descendants. Dixon, who was Georgia's son, survived his mother but predeceased Ralph. The central issue in this appeal is whether Dixon's estate takes any interest under the Deed.

3

The parties agree that the Deed created a life estate first in D. W., then a second life estate in Ralph. But they dispute the meaning of the Deed's language conveying an interest to D. W.'s "other living children or their children" in the event that Ralph died without issue. Wilkes argues that we should interpret this provision as referring to D. W.'s children living at the time the Deed was executed, without any requirement that such children also survive Ralph. And because Dixon's mother was one of those children, he argues that she received a remainder, which, by law, passed to Dixon at his mother's death. Thus, Wilkes argues that Dixon's estate would be entitled to share in the property. Nell argues, however, that the Deed provided that the remainder of the estate would pass only to D. W.'s children and grandchildren who were alive when Ralph died without issue. Accordingly, under Nell's interpretation, Dixon's estate does not receive an interest because Dixon did not survive Ralph.

The trial court found, without discussing the nature of the interests conveyed by the Deed and without citation to legal authority, that

> the deed is unambiguous and the intent of [D. W.] is clear: if Ralph Wilkes dies without children, the property goes to the **living** children or their children of [D. W.] (sic). Therefore, one half interest in the property vests to James David Wilkes and one half interest in the property vests to Nell Wilkes Fraser.

4

(Emphasis in original.)

On appeal, "[o]ur purpose is to ascertain the intention of the parties concerned at the time of the execution of the deed in question, looking to the language used in the deed to make such determination." *Churches Homes for Business Girls, Inc. v. Manget Foundation, Inc.*, 110 Ga. App. 539, 542 (139 SE2d 138) (1964). "In the construction of an instrument, the whole instrument is to be construed together so as to give effect, if possible, to the entire deed[,] and the construction which will uphold a deed in whole and in every part is to be preferred." (Citations and punctuation omitted.) *Municipal Elec. Auth. of Georgia v. 2100 Riveredge Assoc., Ltd.*, 180 Ga. App. 326, 327 (348 SE2d 890) (1986).

Considering the Deed as a whole, it is apparent that in addition to the two life estates conveyed to D. W. and to Ralph, the instrument also conveyed two other alternate remainders. Under Georgia law, "[r]emainders are either vested or contingent. A vested remainder is a remainder which is limited to a certain person at a certain time or which is dependent upon the happening of a necessary event." OCGA § 44-6-61 (formerly Code 1933 § 85-703).[4] But "[a] contingent remainder is

---

[4] We cite to the current version of the statute and note the citation to the Code 1933, which was in effect at the time the Deed was executed, when the language in the code section has not changed.

5

[either] a remainder [(1)] which is limited to an uncertain person or [(2)] which is dependent upon an event which may or may not happen." Id. See also *Henderson v. Collins*, 245 Ga. 776, 778 (1) (267 SE2d 202) (1980) ("Uncertainty as to the right of future enjoyment is the hallmark of a contingent interest . . . .") (citation omitted; emphasis omitted). Because Ralph had no children when the Deed was signed, the language granting an interest to Ralph's children upon his death created the first type of contingent remainder, a remainder limited as to uncertain persons.[5] See *Folsom v. Rowell*, 281 Ga. 494, 496 (1) (640 SE2d 5) (2007). The Deed also granted to D. W.'s "other living children or their children" an alternate remainder, which was limited to Ralph's dying without issue. This provision, therefore, created either a vested remainder in D. W.'s other children, subject to divestment if Ralph had children, or the second form of contingent remainder, a remainder limited to an event which may or may not happen. See *Miller v. Walker*, 270 Ga. 811, 818 (514 SE2d 22) (1979) (Fletcher, P. J., dissenting) (for explanation of remainder interests).

---

[5] This contingent interest would have vested in any of Ralph's later born children, but was defeated when Ralph died childless. See *Miller v. Brown*, 215 Ga. 148, 151-152 (109 SE2d 741) (1959). See also OCGA § 44-6-65 (formerly Code 1933, § 85-706) ("Estates in remainder may be created for persons not in being. If such a remainder is vested, it will open to take in all persons within the description who come into being up to the time the enjoyment of the estate commences.").

At the time D. W. executed the Deed, a then-existing Georgia statute provided that "[i]f the remainderman shall die before the time arrives for possessing his estate in remainder, his heirs shall be entitled to a vested-remainder interest, and to a contingent-remainder interest when the contingency is not as to the person but as to the event. If the contingency shall be as to the person, and that person shall not be in esse at the time when the contingency happens, his heirs shall not be entitled." Code 1933 § 85-704. As the Supreme Court has explained, "[t]his section simply means that, if remaindermen . . . shall die before the antecedent estate shall terminate and the time arrives for possessing the estate in remainder, the heirs or assigns of such deceased remainderman, if they take at all, will take by inheritance . . . ." *Britt v. Fincher*, 202 Ga. 661, 663 (3) (44 SE2d 372) (1947).

Although this statute, later revised and re-codified at OCGA § 44-6-63, was repealed in 1994, Ga. L. 1994, p. 364, § 2, the Supreme Court of Georgia has held that this repeal is not to be given retroactive effect because "the presumption is that [a grantor] intended that his property should go where the law carries it. The statutory change in the law [in this case 58 years later] relating to the [] rights of remaindermen will not be given retrospective effect." (Citations and punctuation omitted.) *Folsom*, 281 Ga. at 496 (1). See also *Sardy v. Hodge*, 264 Ga. 548, 549-550 (448 SE2d 355)

7

(1994).[6] We find, therefore, that Code 1933 § 85-704 governs the interests of any remaindermen under the Deed.

Accordingly, we must construe the Deed's use of the language, "other living children and their children" in order to identify the remaindermen who received an interest in the Property at Ralph's death without children. In considering this language, we begin with the general rule that Georgia law favors the early vesting of remainders "in all cases of doubt." OCGA § 44-6-66 (formerly Code 1933 § 85-708). Therefore, "[i]n construing wills, words of survivorship shall refer to those survivors living at the time of the death of the testator in order to vest remainders unless a manifest intention to the contrary shall appear." Id. Thus, the Georgia Supreme Court has held that "[i]n view of the strong preference in Georgia for early vesting, the language required to render a remainder contingent upon surviving the life tenant must be clear and unambiguous." (Citations omitted.) *Usry v. Farr,* 274 Ga. 438, 440 (2) (553 SE2d 789) (2001). See also *Folsom*, 281 Ga. at 497 (1).

---

[6] Although these cases were construing wills, we see no reason to distinguish between remainders conveyed by will and those conveyed by deed nor any reason that the presumption regarding a testator's intent would not equally apply to a grantor in a deed. See *Baird v. Brookin*, 86 Ga. 709 (12 SE 981) (1891) (finding no basis for varying the rules of construction as between deeds and wills).

The same principles can be applied to a deed, taking into account that the transfer of any future interest in a deed occurs upon execution and delivery of the instrument and not upon some later event (e.g., the grantor's death). A statute in effect at the time of the Deed's execution specifically provided that "[a] future interest or estate may be conveyed by deed; but it must operate to transfer the title immediately, or the instrument will be testamentary and revocable."[7] Code 1933 § 29-103. See also *Montgomery v. Reeves*, 167 Ga. 623, 626 (146 SE 311) (1929) (a deed transfers title upon the deed's execution and delivery, even where "the enjoyment of the property conveyed may be postponed until the death of the grantor.") (citations omitted). Therefore, because the transfer of any interest under the Deed occurred immediately upon the Deed's execution and delivery, we find that the phrase "other living children" necessarily referred to D. W.'s other children living on May 23, 1936.

Moreover, we find that nothing in the Deed's language clearly and unambiguously imposed a requirement that D. W.'s children survive Ralph. Rather,

---

[7] This statute was amended in 1994, and now provides that all "[f]uture interests or estates [including contingent interests limited to uncertain persons] are *descendible*, devisable, and alienable in the same manner as estates in possession." (Emphasis supplied.) OCGA § 44-5-40. Thus, the result we reach in this case would be the same under current Georgia law.

the use of the phrase "living children" must be interpreted as reflecting D. W.'s intent that no afterborn children would have an interest in the Property; instead, only the four other children living at the time had a remainder interest in the land. The addition of the phrase "or their children" can be interpreted as a limitation on the rule codified in Code 1933 § 85-704 that should any of D. W.'s other children predecease Ralph, their estate would go to their heirs. As drafted, the language of the Deed reflects an intent that only the children of D. W.'s other children, and no other heirs, would receive a remainder, should one of D. W.'s other children predecease Ralph.

Nell argues, however, that because D. W. had no grandchildren when he signed the Deed, the grant of the interest to D. W.'s "other living children or their children" created a contingent remainder as to the person with regard to a class consisting of D. W.'s then unborn grandchildren. She argues that Dixon's contingency interest, therefore, was limited to uncertain persons, and because he failed to survive Ralph, under Code 1933 § 85-704, his contingent remainder did not pass to his heirs. But Nell's argument ignores the fact that Dixon was alive at the time his mother died, at which time he took his mother Georgia's remainder interest by inheritance under the terms of the Deed.

10

If we apply our state's policy favoring early vesting and construe Georgia's interest to have been a vested remainder subject to divestment, Dixon would have received a vested remainder interest in the Property at his mother's death, subject to divestment if Ralph had children. As the Georgia Supreme Court has explained,

> If the remainderman had at the time of his death prior to the termination of the antecedent estate a vested remainder interest but subject to be divested, his heirs at law would take by descent his interest, subject, however, to the same divesting contingency; and if the divesting contingency never happened or became impossible, the remainder interest in his heirs at law would ripen into an absolute estate.

*Britt*, 202 Ga. 664 (3) (a). But even if we were to construe Georgia's interest as a contingent remainder, the result would be the same because the contingency of Ralph's having children never occurred:

> If the remainderman at the time of his death prior to the termination of the antecedent estate held only a contingent remainder interest, that is to say, if title to the remainder estate had not vested in him prior to his death, but the contingency was as to an event and not as to the person, then his heirs at law would take by descent the same contingent remainder interest which was held by such deceased remainderman and subject to the same contingent event; the result being that, if title to the remainder would have vested in the deceased remainderman, had he

11

lived until the termination of the antecedent estate, it would likewise vest in his heirs at law.

(Citations omitted.) *Britt*, 202 Ga. at 664 (3) (a). Therefore, because Ralph died without children, we need not determine whether the interest granted to D. W.'s other children was vested subject to divestment or merely contingent. In either case, we find that Dixon took his interest in the remainder by descent, and that this construction is consistent with the language of the Deed that the property pass to D. W.'s "other living children or their children." Dixon's interest, in turn, passed to his heirs when he predeceased Ralph.[8] See *Folsom*, 281 Ga. at 497 (1).

In order to accept Nell's argument that we should interpret the Deed as imposing a requirement that any remainderman survive Ralph, we would have to ignore our state's policy favoring early vesting, the provisions of Code 1933 § 85-704, and the rule of construction that a grantor must clearly and unambiguously express such an intent. We also would have to re-write the Deed's language, changing the phrase "other living children and their children" to read "other living children or

---

[8] We note that nothing in the language of the Deed addresses the alienability or devisability of interests granted to D. W.'s grandchildren such as Dixon, as the Deed references only D. W.'s other living children's children. Thus, the Deed imposes no requirement that Dixon's interest must pass only to his children.

their living children." Such a re-writing conflicts with generally recognized rules of grammar and construction providing that "[t]he word 'or' is usually a disjunctive conjunction, indicating an alternative between different things."[9] (Citation and punctuation omitted.) *Aetna Cas. & Sur. Co. v. Barden*, 179 Ga. App. 442, 443-444 (1) (346 SE2d 588) (1986). Moreover, "[t]he [courts] may not supply words unless the proof of intention is clear and unquestionable, and the 'clause as it stands is unintelligible or inoperative.' Former OCGA § 53-2-91[, formerly Code 1933 § 113-706]. See current OCGA § 53-4-55." *Folsom*, 281 Ga. at 497-498 (2). See also *McClelland v. Johnson*, 211 Ga. 348, 349 (86 SE2d 97) (1955) ("if the clause as it stands may have effect, it shall be so construed," quoting Code 1933 § 113-706) (punctuation omitted). Because no re-writing is necessary in order to give effect to the Deed's language, we must apply the language as written. And we find nothing in either that language or Georgia law to support Nell's argument that D. W. intended to impose a contingency that the remaindermen survive Ralph.

---

[9] Here, D. W.'s "other living children" is one thing and "their children" the other. The first phrase places two modifiers on the word children, "other" and "living," and the second phrase uses only one modifier, "their," on the word "children." We know of no justification for transferring one of the two modifiers from the first of the two disjunctives to the other to impose the requirement that any remaindermen survive Ralph.

13

Accordingly, we hold that the "other living children" referenced in the Deed were Georgia, Nell, Davie Lee and Earl, and the phrase "their children" referred to the children of those four individuals. Earl died before Ralph, and the parties do not dispute that his interest lapsed when he died without children. Georgia and Davie Lee also predeceased Ralph, but left children. Under the terms of the Deed, each of those children, Dixon and Wilkes, inherited his mother's remainder at the time of her death. When Dixon also predeceased Ralph, his interest transferred to his heirs under Code 1933 § 85-704, under the terms of his will, or pursuant to another document transferring title.

Under Georgia law, both vested and future interests, especially those limited to an event not involving survivorship, generally have been considered fully alienable and devisable. See Redfearn, Wills and Administration in Georgia, § 13.14 (7th ed. 2008); Agnor, Future Interests: The Law in Georgia, §§ 3-1 & 3-2 (1979). See also OCGA § 44-5-40; Code 1933 § 29-103; *Wiley v. Wooten*, 140 Ga. 16 (78 SE 335) (1913). Therefore, Dixon was free to assign his interest or to include it in the provisions of his will.

Because Wilkes, as executor, is claiming an interest in the Property on behalf of Dixon's estate, it appears that Dixon executed a will and may have devised his

14

remainder interest in the Property under that instrument. Alternatively, he could have assigned or transferred his interest in some other fashion. Had Dixon not predeceased Ralph, his interest would have vested absolutely when Ralph died without issue. Because he predeceased Ralph, however, that interest instead became vested in Dixon's estate upon Ralph's death if the interest was devised under his will, or if Dixon had otherwise assigned or transferred his interest, it would have vested in the designated recipient. Because neither Dixon's will nor any other document conveying his interest in the remainder appears in the record, we can only hold that Dixon's interest vested in either his estate or as he otherwise may have conveyed.

We conclude, therefore, that under the Deed, D. W.'s daughter Nell received a one-third undivided interest in the Property, and Wilkes and Dixon's estate (or any party to which Dixon may have conveyed his interest) each received a one-third undivided interest. This interpretation gives effect to the Deed as a whole, as well as the law in effect at the time it was executed and delivered.[10] Accordingly, we reverse

[10] This interpretation also is consistent with the other deed in the record executed by D. W. the same day, which granted an interest, jointly and in common, in 164 acres of land to Earl and Nell "during their life and at their death to their children." That deed also included an alternate remainder, that "[s]hould either the said Earl Wilkes and Nell Wilkes die without issue in that event the interest of either shall go to my other living children or their children." Moreover, the legal description in the Deed references a third deed, reciting that Ralph's Property was bounded on

15

the trial court's order, and hold that at Ralph's death, a one-third interest in the Property vested in Nell, a one-third interest vested in Wilkes and a one-third interest vested in Dixon's estate or as he otherwise may have conveyed.

*Judgment reversed. Andrews, P. J., and Dillard, J., concur.*

---

the west by certain other property that D. W. had conveyed the same day to "Georgia Wilkes and Davie Lee Wilkes during their lifetime and at their death to their children." It is apparent, therefore, that D. W. was intending to leave the sum of the property conveyed in these deeds to either his children or any afterborn grandchildren.

16



Appendix 1

D.W. Wilkes, Grantor, granted life estate to himself.

*Died August 17, 1938, survived by five children.*

Then granted life estate to his son, Ralph Wilkes.

Then, at Ralph's death, to his children. "Should the said Ralph Wilkes die without issue in that event the lands shall go to my other living children or their children."

*Ralph died without issue December 15, 2009.*

Georgia Wilkes Dixon (D. W.'s daughter) *Died before Ralph.*

Nell Wilkes Fraser (D. W.'s daughter) *Alive at the time of Ralph's death.*

Davie Lee Wilkes Wilkes (D. W.'s daughter ) *Died before Ralph.*

Earl Wilkes (D.W.'s son) *Died before Ralph without issue.*

Ricky Louie Dixon (D. W.'s grandson) *Died before Ralph on September 4, 2009*

James David Wilkes (D. W.'s grandson) *Alive at time of Ralph's death.*

James David Wilkes also is the Executor of Ricky Louie Dixon's estate.

17